394 A.2d 1007

COMMONWEALTH of Pennsylvania

v.

Vivian Lloyd RICHBOURG, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 14, 1977.

Decided Nov. 22, 1978.

440

Lester G. Nauhaus and Louis R. Dadowski, Appellate Counsel, Office of the Public Defenders, Pittsburgh, for appellant.

Robert L. Eberhardt, Assistant District Attorney, and Robert E. Colville, District Attorney, Pittsburgh, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

After a jury trial, appellant was convicted on March 22, 1976, of two counts of robbery with a weapon,[1] two counts of criminal conspiracy,[2] carrying firearms without a license,[3] and burglary.[4]  Post-verdict motions were denied and appellant was sentenced to concurrent ten to twenty year terms of imprisonment for the robbery charges and a consecutive two and one-half to five year sentence for the burglary charge.  Sentence was suspended on both conspiracy convictions.  Appellant now contends that: (1) his constitutional rights were infringed by the exclusion of Blacks from the jury; (2) the trial court erred in admitting certain evidence of appellant's non-possession of a firearms license; (3) appellant should not have been directed to stand in court so as to provide Commonwealth witnesses with an opportunity to identify him; (4) the verdict was against the weight of the evidence; (5) the "Multiple Conviction" statute bars his conviction for conspiracy.  We find merit only in appellant's final contention and thus remand for resentencing.

1.  18 Pa.C.S. § 3701.

2.  18 Pa.C.S. § 903.

3.  18 Pa.C.S. § 6106.

4.  18 Pa.C.S. § 3502.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, *Commonwealth v. Burton,* 450 Pa. 532, 301 A.2d 599 (1973), the following facts were adduced at trial. On July 10, 1975, Mark Kent was admitted to the apartment of Robert Boehm and Raymond Finfrock, and requested the use of the phone because his automobile was allegedly disabled. Both Boehm and Finfrock were managers of separate Hardee's Restaurants in the Downtown Pittsburgh area. Kent departed after completing the call.

During the evening of July 14, 1975, Kent, along with appellant and one other man, later identified as James "Blood" Johnson, forcibly gained entrance to the same apartment. Although Finfrock was working at the time, Boehm was present and was immediately bound, gagged and blindfolded. Both appellant and Johnson wore ski masks and possessed weapons. The intruders forced Boehm to reveal the combination to the Hardee's safe and to relinquish the store's keys and floorplan. Upon Finfrock's return, at approximately 1:30 a.m., he was summarily accosted, bound and gagged. The money, credit cards and personal items of both victims were removed and they were placed in separate bedrooms.

Appellant and Kent then left the apartment and proceeded to the Hardee's managed by Boehm, entered the building, and removed $1,700 from the safe. They telephoned Johnson, who had remained to guard Boehm and Finfrock, and instructed him to abandon the victims and to rendezvous to divide the spoils.

Kent later testified that the entire scheme was formulated by appellant. This contention was corroborated by Randy McCleary, who testified that appellant had earlier approached him with the idea of a possible robbery of two Hardee's managers.

Appellant's first contention relative to the alleged unconstitutional exclusion of Black jurors is without merit in light of *Commonwealth v. Martin,* 461 Pa. 289, 336 A.2d 290

(1975). In *Martin,* our supreme court stated that a defendant may not demand exactly proportional representation of races on a jury, nor does he have a right to demand that members of his own race sit on his trial jury. *Commonwealth v. Martin, supra,* 461 Pa. at 296, 336 A.2d at 293. *See also Commonwealth v. Jones,* 452 Pa. 299, 304 A.2d 684 (1973); *Commonwealth v. Darden,* 441 Pa. 41, 271 A.2d 257 (1970). Nevertheless, a defendant does have the right to require the Commonwealth not to deliberately and systematically exclude members of his own race from the jury. *Commonwealth v. Martin, supra,* 461 Pa. at 296, 336 A.2d at 293. The defendant must therefore prove systematic exclusion and demonstrate a prima facie case of discrimination. Only then does the burden shift to the Commonwealth. Such a procedure has been noted and approved by the United States Supreme Court. *E. g., Whitus v. Georgia,* 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967).

In conjunction with peremptory challenges, the *Martin* panel adopted the following position:

> *"The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome . . . by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes." Commonwealth v. Martin, supra,* 461 Pa. at 297, 336 A.2d at 294, *quoting Swain v. Alabama,* 380 U.S. 202, 222, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). (Emphasis in original).

Rather, the presumption is overcome only when

> "the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors . . ." *Id., quoting Swain v. Alabama, supra* at 223, 85 S.Ct. at 837.

In *Martin,* the Commonwealth exercised fourteen peremptory challenges with eight being used to exclude Blacks and

six to exclude whites. No Black was a member of the jury which convicted the defendant of murder. Nonetheless, the court concluded that a bald assertion of discrimination, unsubstantiated by facts indicating a prior pattern of exclusion cannot *per se* support an allegation of constitutional impropriety.

In the instant case, we have not a scintilla of evidence that the prosecutor systematically exercised his peremptory challenges so as to prevent Blacks from becoming jury members. Moreover, the record is completely bare of any factual information from which we could infer a constitutional violation. Finally, appellant's reliance in *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972), is misplaced. *Peters* decided only that one could have *standing* to challenge the systematic exclusion of an identifiable group from jury service. The requirement of *proving* such exclusion remains.

■ Appellant's second contention is disposed of by 28 P.S. § 110 which states that:

"The certification of a duly authorized representative of any administrative department, board or commission, attesting to the licensure status or non-licensure status of an individual, as shown by the required official records, shall be received as evidence in all courts in this Commonwealth in the trial of any case." Act of April 6, 1951, P.L. 68, § 1.

The certified letter from the licensing bureau of the Pennsylvania State Police attesting to appellant's non-licensure to carry a firearm was therefore properly admitted.

■ Appellant next asserts, with no supporting citations, that he should not have been forced to stand during trial so as to allow Commonwealth witnesses to more readily identify him as having a build similar to that of one of the intruders. This contention is frivolous. It is clear that such an action is not testimonial in nature and is not protected by the fifth amendment right against self-incrimination. *See e. g., Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973); *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *Commonwealth v. Safis,* 122

Pa.Super. 333, 186 A. 177 (1936). Appellant apparently premises his objection, however, on the basis that forcing him to stand prejudiced the identification process by placing him in the "spotlight". Appellant, however, is in the "spotlight" merely by sitting at the defense table. Having him stand to allow a better view is no more prejudicial than removing a mask from his face or having him wear a piece of apparel. *See Holt v. United States,* 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). Clearly, a pre-trial lineup that is unduly suggestive is a denial of due process, *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), but circumstances differ in the courtroom. It has thus been held proper, for example, for the defendant to be the only member of his race in the courtroom, *United States v. Moss,* 410 F.2d 386 (3d Cir. 1969), or for the government not to provide additional people with masks when the defendant was forced to wear one, *United States v. Roberts,* 481 F.2d 892 (5th Cir. 1973). Such in-court identification of "similar" physical characteristics, while perhaps not persuasive as to identity, is permissible and its weight is a matter for the jury. *Commonwealth v. Kloiber,* 378 Pa. 412, 416, 106 A.2d 820, 823 (1954).

Appellant's fourth contention is that the verdict is against the weight of the evidence because of the "self-serving" testimony of two of the Commonwealth witnesses, namely, Kent and McCleary. In evaluating the sufficiency of the evidence in a criminal case, the test to be employed is whether the finder of fact could reasonably have found that all elements of the crime charged had been proved beyond a reasonable doubt. *Commonwealth v. Roux,* 465 Pa. 482, 485, 350 A.2d 867, 869 (1976). In the instant case, the testimony of Kent and McCleary as to the identity and action of appellant, if believed, clearly indicates guilt beyond a reasonable doubt. Whether or not the testimony is self-serving, it is axiomatic that the fact finder is free to believe all, part or none of a witness's testimony. *Commonwealth v. Duncan,* 473 Pa. 62, 68, 373 A.2d 1051, 1053 (1977); *Common-*

*wealth v. Roux, supra.* Thus, in the instant case, we cannot say that the evidence was insufficient to support a guilty verdict.

Finally, appellant contends, and the Commonwealth concedes, that the criminal conspiracy convictions were improper under Section 903(c) of the Crimes Code which states that:

> "If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa.C.S. § 903.

In light of this, it is clear that both convictions for conspiracy cannot stand.[5] It is similarly clear, however, that we may affirm the conviction for conspiracy to burglarize, the ultimate intent of appellant and his cohorts, and vacate the conviction for conspiracy to commit robbery.[6] Such a conclusion is supported by the record of this case, which indicates that the robbery of Boehm and Finfrock to obtain the restaurant keys was only a necessary intermediate step designed to effectuate the desired end; namely the breaking of the Hardee's safe.

The conviction on the count of conspiracy to commit robbery is thus vacated. The judgments of sentence for carrying firearms without a license, burglary and both counts of robbery with a weapon are affirmed. The case is remanded for resentencing for conspiracy to burglarize.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

5. Appellant also asserts that both conspiracy convictions are barred by 18 Pa.C.S. § 906 concerning multiple convictions. We find such an argument without merit.

6. This court may, in its discretion, either modify the sentence or remand for modification. Act of July 31, 1970, P.L. 673, No. 223, Art. V, § 504, 17 P.S. § 211.504.