464 A.2d 411

**COMMONWEALTH of Pennsylvania**

v.

**Charles Edward WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 20, 1982.

Filed July 29, 1983.

Petition for Allowance of Appeal Denied Dec. 14, 1983.

458

Jeffrey Schmehl, Assistant Public Defender, Reading, for appellant.

George C. Yatron, District Attorney, Reading, for Com., appellee.

Before JOHNSON, WATKINS and LIPEZ, JJ.

LIPEZ, Judge:

Appellant Charles Edward Williams was convicted by a jury of rape, 18 Pa.C.S. § 3121, indecent assault, 18 Pa.C.S. § 3126, simple assault, 18 Pa.C.S. § 2701, and recklessly endangering another person, 18 Pa.C.S. § 2705. The charges arose from an incident in which, according to the Commonwealth's evidence, appellant grabbed a fourteen-year-old girl who had been walking along a city street with a friend. He forced the girl at knifepoint into an abandoned house, where he raped her, then ran away. Based on a description given to police by the victim and her companion, appellant was arrested in a nearby bar after police had spotted him running away from the area where the rape had occurred and had seen him run into the bar. He was put into a police car and brought to the victim and her

friend, both of whom identified him as the attacker.[1] Appellant was then taken to police headquarters, where his clothes and other personal belongings were taken by police before he was put into a cell. A search warrant was secured for seizure of body samples from appellant, and these samples were taken at about 10:30 that night. Analysis of the clothing and body samples indicated that appellant could have committed the rape.

Appellant makes eight arguments for reversal of his conviction. The first four of these, which we shall address together, are general claims that the verdict is contrary to the law, the evidence, and the weight of the evidence and that the evidence is insufficient to sustain the verdict.[2] We find them to be without merit.

In considering challenges to the weight and sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict winner—in this case, the Commonwealth. *Commonwealth v. Cropper*, 463 Pa. 529, 345 A.2d 645 (1975). The test to be employed in resolving these challenges is whether, accepting as true all the evidence, direct and circumstantial, which could properly have been the basis for the jury's verdict, a finder of fact could reasonably have found that all the elements of the crimes had been proven beyond a reasonable doubt. *Commonwealth v. Cheatham*, 429 Pa. 198, 239 A.2d 293 (1968); *Commonwealth v. Richbourg*, 260 Pa.Super.Ct. 438, 394 A.2d 1007 (1978). Here, the Commonwealth's evidence showed that the victim had been raped by a black man wearing dark pants, a dark jacket, a scarf and a print shirt. Appellant, who was subsequently identified by an eyewitness as the attacker, was apprehended by police shortly after the rape only a few blocks from the house where the

1. The victim's identification was suppressed by agreement of the parties.

2. As this appeal was filed prior to the decision of this court *en banc* in *Commonwealth v. Holmes*, 315 Pa.Super.Ct. 256, 461 A.2d 1268 (1983), we will consider the merits of these claims despite the fact that they were made in boilerplate pleadings.

incident occurred, wearing only dark pants and a tee shirt. A brown jacket, a print shirt and an orange scarf were found discarded in various alleys near the scene of the incident. Tests performed on the victim revealed the presence of seminal fluid in her vagina, and tests performed on her underclothes showed that the semen was of blood type A, appellant's blood type. Tests performed on appellant's clothing revealed the presence of pubic hairs which exactly matched those of the victim. Although neither the victim nor the eyewitness could identify him positively at trial, there was testimony establishing that appellant was the man who had been identified as the rapist at the time of the incident, and showing that drastic changes in his hairstyle and facial hair might account for the difficulty in making the in-court identification.

Viewed as a whole, we think that the Commonwealth's evidence, presented by credible eyewitnesses and experts, was sufficient to establish beyond a reasonable doubt all the elements of the crimes charged. We therefore find the verdict to be entirely in accordance with the law and the evidence, and reject appellant's first four claims.

His remaining four claims are: (1) the court erred in refusing to suppress the identification of appellant by the victim's companion and the physical evidence seized from appellant; (2) that the court erred in denying appellant's petition to dismiss under Pennsylvania Rule of Criminal Procedure 1100; (3) that the court erred in ordering appellant to try on articles of clothing in the presence of the jury; and (4) that the court erred in admitting a blue print shirt and a knife into evidence. We reject all of these arguments and affirm the judgment of sentence.

I

Appellant's first contention is that the court erred in denying his motion to suppress physical evidence seized from him and testimony as to the identification by the victim's companion of appellant as the attacker. In considering such claims, we must determine whether the evi-

dence supports the court's factual findings and whether the legal conclusions drawn from those findings were legitimate. This determination is made considering only the evidence of the prosecution's witnesses and so much of the defense evidence as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976); *Commonwealth v. Hunt,* 280 Pa.Super.Ct. 205, 421 A.2d 684 (1980). Findings supported by the record and legitimate legal conclusions drawn therefrom will not be disturbed. *Commonwealth v. Sparrow,* 471 Pa. 490, 370 A.2d 712 (1977).

### A.

Appellant first argues that both the identification and the physical evidence should be suppressed because they flowed from his arrest, which he claims was made without probable cause. We find that because the police did have probable cause to arrest appellant, the arrest was legal and this argument for suppression must fail.

The standard to be used in assessing whether there was probable cause for a given arrest was set forth by this court in *Commonwealth v. Jones,* 271 Pa.Super.Ct. 528, 532, 414 A.2d 379, 381 (1979):

Probable cause to arrest existed if, at the time appellant was detained by the police, the facts and circumstances known to them and of which they had reasonably trustworthy information, were sufficient to warrant a prudent man in believing that appellant had committed the ... [crime]. *Commonwealth v. Powers,* 484 Pa. 198, 201, 398 A.2d 1013, 1014 (1979). The test is not one of certainties but one of probabilities dealing with considerations of everyday life. *Commonwealth v. Dickerson,* 468 Pa. 599, 605, 364 A.2d 677, 681 (1976). The facts known must be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training. *Commonwealth v. Tolbert,* 235 Pa.Super.Ct. 227, 230, 341 A.2d 198, 200 (1975).

Here, an eyewitness described the rapist to police as a black man with a mustache. Shortly after this description was broadcast, a police officer saw a man fitting this description running across a field near the scene of the incident. The man ran in front of the police car, stumbled when he saw it, then shouted that a girl needed help and pointed in the direction of the rape scene. The officer ordered the man to approach the police car, but he disregarded the order and continued to run away from the area where the rape had occurred. The police officer was unable to pursue him because construction made the road impassable, but he broadcast a further description of the individual, saying that he wore dark pants, a blue print shirt, and no jacket despite the winter temperatures. Another officer spotted a man fitting this description running a few blocks away, on the other side of the construction area. Upon seeing the police officer, the man stopped short and ran into a bar. The policeman followed him into the bar and arrested him there. The arrest occurred within approximately five minutes of the first report of the incident and only a few blocks away from the house where the rape had occurred. We think that the fact that appellant fit the description given by the victim and the eyewitness, taken together with appellant's suspicious behavior in ignoring police orders to stop, his repeated attempts to escape or hide from police and the proximity of these events in both time and place to the rape justified the police in arresting him. We therefore find that there was probable cause for the arrest, and that neither the identification nor the physical evidence need be suppressed as fruits of that arrest.

## B.

Appellant argues further that even if the arrest was valid, the identification should be suppressed. The record shows that the identification occurred about twenty-five minutes after the rape. Appellant was transported in a police car to an area near that where the initial attack occurred. He was taken from the car, and stood near the car under a streetlight when the witness, standing on the

sidewalk, was asked if he were the man who had attacked her friend. She answered that he was. Appellant contends that the fact that he was in police custody at the time of the identification was so suggestive as to render the witness' identification of him as the assailant inadmissible. We disagree.

■ The standard to be used in determining the admissibility of identifications pursuant to "show-ups" like the one in this case is whether, viewing the totality of the circumstances, the identification was reliable even though the confrontation was suggestive. *Manson v. Brathwaite*, 432 U.S. 98, 106, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977). In dealing with such on-the-scene identifications, our courts have recognized that "the close proximity in time and place to the actual offense so enhances the reliability as to outweigh the prejudice" in most cases. *Commonwealth v. Mackey*, 447 Pa. 32, 36, 288 A.2d 778, 780 (1972). The factors to be considered in weighing reliability "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [her] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson v. Brathwaite, supra*, 432 U.S. at 114, 97 S.Ct. at 2253. Here, the witness was able to observe appellant at close range, although only for a brief time, on a lighted street. This view occurred under circumstances likely to increase her degree of attention and to impress the criminal's face upon her memory. Although her description of the assailant was only general, she displayed absolute certainty that appellant was the assailant when she confronted him, and this confrontation occurred within half an hour of the time of the crime. In light of these facts, the suggestiveness of appellant's being brought to the scene in a police car and in police custody is insufficient to outweigh the reliability of the identification. Accordingly, we hold that testimony regarding the identification was properly admitted.

## C.

Appellant also contends that the physical evidence seized from him after his arrest should have been suppressed on three grounds: first, that articles of clothing taken from him were not listed on the Receipt/Inventory of the search warrant; second, that the search warrant to obtain body samples was issued without probable cause; and third, that the search was conducted after 10:00 p.m. without authorization for a nighttime search. We reject all three of these arguments.

Appellant's first ground for suppressing the physical evidence is meritless. The record is clear that the clothing taken from appellant was seized, not in connection with the search warrant, but as part of the processing procedures in connection with appellant's arrest. The Pennsylvania Rules of Criminal Procedure require only that property seized pursuant to a search warrant be listed on the inventory, Pa.R.Crim.P. 2009, and it is therefore clear that the omission of appellant's clothing from the inventory was proper. Appellant has not argued that seizure of the clothing as part of post-arrest processing was improper. Hence, we find no basis for disturbing the lower court's admission of the clothing into evidence.

Appellant also argues that body samples (hair, pubic hair, blood and semen) obtained from him should have been suppressed because they were secured pursuant to a warrant issued without probable cause. He claims that because the probable cause affidavit failed to state by whom the identification which linked him to the crime was made, it was insufficient as a matter of law to justify issuance of the warrant. The warrant's probable cause affidavit stated:

> [A]t about 6:55 p.m. this date, police received a report of a black male accosting a 14 year old girl .... Arriving police immediately determined that a 14 year old girl had just been raped ... and the suspect was a black male. Within about 5 minutes, a suspect was arrested in close proximity to the crime scene and subsequently identified

as the rapid. This individual was the above named Charles Edward Williams [appellant here].

In order to serve as the basis for issuance of a valid search warrant, the probable cause affidavit must set forth facts which give the issuing authority a basis for making an independent judgment that probable cause for the search exists. *Commonwealth v. Luddy*, 281 Pa.Super.Ct. 541, 422 A.2d 601 (1980) *cert. denied*, 454 U.S. 825, 102 S.Ct. 114, 70 L.Ed.2d 99 (1981). Where the statement recites facts outside the personal knowledge of the police affiant, the affidavit must set forth sufficient underlying circumstances to enable the issuing authority to judge not only the validity of the informer's information, but also the reliability of the informer. *Commonwealth v. Frazier*, 269 Pa.Super.Ct. 527, 410 A.2d 826 (1979); *see also Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). These affidavits must be read in a sympathetic, commonsense manner, with due regard for the hectic conditions under which they are often prepared, however. *Commonwealth v. Luddy, supra.* Here, it is true that the person identifying appellant as the rapist is not named and that no detail is given as to the reliability of that person or his or her basis for making the identification. However, reading the affidavit as a whole, as we must, *Commonwealth v. Luddy, supra*, we think that the fair implication of the statement is that the identification was made either by the victim or an eyewitness. Since an identification by either would be sufficiently reliable to serve as the basis for a finding of probable cause, we hold that the warrant was properly granted and that the evidence obtained pursuant to it was properly admitted.

Appellant argues further, however, that because the warrant did not authorize a nighttime search and the search was conducted after 10:00 p.m., the samples obtained pursuant to the warrant must be suppressed. Appellant's argument is based on a misreading of Pennsylvania Rule of Criminal Procedure 2005(a), however. That rule requires

that, unless otherwise authorized, the warrant must be *served* before 10:00 p.m. Here, although the Receipt/Inventory indicates that the search was completed after 10:00, there was testimony to the effect that appellant was taken to the hospital and served with the warrant shortly before 10:00. As there is thus support in the record for the trial court's finding that the warrant was served before 10:00 in accordance with the rule, we will not disturb it. In light of that finding, we find appellant's claim to be without merit, and hold that the body samples were properly admitted.

## II

Appellant's second claim is that the Commonwealth failed to exercise due diligence in bringing him to trial within the 180-day time limit of Pennsylvania Rule of Criminal Procedure 1100 and therefore that the Commonwealth's petition to extend the time for trial was erroneously granted.

The lower court made the following findings, all of which are supported by the record. Appellant's case had been listed for trial during the last week of jury trials before expiration of the 180 days. On the first two days of that week, however, defense counsel was engaged in trial of another matter and was unavailable for appellant's case. Accordingly, the case was listed for Wednesday of the trial week. The prosecution then informed the court that one of its expert witnesses would be unavailable on Wednesday and Thursday because he had to testify in another case in federal court. Both appellant and the prosecution were ready to proceed with the trial on the Friday of trial week, but the case could not be commenced because the trial was expected to last more than one day and scheduling conflicts and vacations would prevent any of the county's five judges from hearing the case during the following week.

Appellant contends that because the prosecution did not have all of its witnesses available for the entire trial week and because the case was not scheduled for the Friday of trial week, due diligence was not exercised by the

Commonwealth and his case should have been dismissed. We disagree. "The test in determining whether the Commonwealth acted with due diligence is one of reasonableness under the circumstances." *Commonwealth v. Wroten,* 305 Pa.Super.Ct. 340, 345, 451 A.2d 678, 681 (1982). Here, the Commonwealth was prepared to go to trial at the beginning of the trial week which preceded the Rule 1100 run date. It was defense counsel's unavailability which delayed the trial until Wednesday of that week, when a key Commonwealth witness was unavailable.

> When witnesses become unavailable toward the end of the Rule 1100 time period—whether through vacation, illness, or other reasons not within the Commonwealth's control—the Commonwealth is prevented from commencing trial within the requisite period despite its due diligence and an extension of time is warranted.

*Commonwealth v. Sinor,* 264 Pa.Super.Ct. 178, 183 n. 5, 399 A.2d 724, 727–28 n. 5 (1979); *see also Commonwealth v. Williams,* 310 Pa.Super.Ct. 501, 507–08, 456 A.2d 1047, 1050 (1983) *Commonwealth v. Sharp,* 287 Pa.Super.Ct. 314, 317, 430 A.2d 302, 304 (1981). The fact that the witness in this case was required to testify elsewhere on two of the available trial dates was certainly a reason for his absence beyond the Commonwealth's control, and we agree with the trial court that the resulting delay was not due to any lack of diligence on the part of the prosecution.[3]

Nor do we find failure to commence trial on the last day of the trial week to be a failure of due diligence on the part of the Commonwealth. The record indicates that although

---

**3.** Appellant argues that since the trial was estimated to last several days, the Commonwealth could have proceeded with the trial and called the expert witness on Friday, when he was once more available. While it is true that the Commonwealth could have done this, the record reveals that a three-day trial was merely an estimate and that the witness had stated only that he would *probably* be available on Friday. In light of the uncertainties as to the length of the trial and the availability of the witness even if the trial were to last three days, we believe that the Commonwealth acted reasonably in postponing the trial. "[D]ue diligence does not demand a perfect diligence and punctilious care, but rather a reasonable effort." *Commonwealth v. Polsky,* 493 Pa. 402, 407, 426 A.2d 610, 613 (1981).

judges and courtrooms were available on that day, appellant's trial was expected to last for three days, thus extending into the following week. During that week, two of the county's five judges were unavailable due to vacations. The remaining three judges were scheduled to hear other matters throughout the week. Such judicial delay justifies an extension of time if the Commonwealth is ready to proceed. *Commonwealth v. Wroten, supra* 305 Pa.Super.Ct. at 345, 451 A.2d at 681. We therefore hold that the Commonwealth's petition to extend the time for trial was properly granted.

## III

■ Appellant's third contention is that the court erred in ordering him, in the jury's presence, to try on a shirt and jacket found near the scene of the crime. Our review of claims like this is limited, for it is well established that the trial court has wide discretion to permit experiments and demonstrations of this type. *See, e.g. Commonwealth v. Laniewski,* 427 Pa. 455, 235 A.2d 136 (1967). Appellant relies on *Commonwealth v. Benaglio,* 254 Pa.Super.Ct. 100, 385 A.2d 544 (1978), in claiming that the potential prejudice of trying on the clothing outweighed the demonstration's probative value and hence that the trial court abused its discretion in allowing such a demonstration to proceed. The court considered *Benaglio* in its opinion denying appellant's motion for new trial, however, and found it to be distinguishable. We think that it decided correctly.

■ *Benaglio* was a robbery case in which the defense attempted to cast doubt on the victim's identification of defendant as one of the robbers by pointing out that defendant customarily wore glasses while the robber, who wore a nylon stocking over his face during the incident, wore no glasses. In an attempt to explain this discrepancy, the prosecution requested that defendant put a stocking over his head in the courtroom, to show that it would be more confortable to remove his glasses before putting on the mask. On appeal, this court found that although this

demonstration had probative value, that value was outweighed by potential prejudice to defendant due to the fact that the demonstration was likely to lead the jury to speculate as to the ease of identifying defendant when he wore the mask. Here, however, appellant concedes that the test had probative value and the only prejudice alleged is that the test would "create an indelible impression in the jury's mind." Brief for Appellant at 26. We do not think that this experiment was so inflammatory as to prevent the jury from recognizing that fit alone did not prove ownership of the clothing or from giving the evidence its proper weight. Moreover, there was no danger here like that in *Benaglio* that the evidence would be likely to cause the jury to engage in impermissible speculation as to other issues critical to the resolution of the case. As the possibilities for prejudice to appellant are much less here than in *Benaglio* and the probative value of the experiment is conceded, we believe that the experiment was properly permitted.

### IV

Appellant's final contention is that the court erred in admitting into evidence a knife and a blue checked shirt because no positive link was established between appellant and the challenged evidence. The record reveals, however, that although witnesses could not positively identify the exhibits as the shirt worn or the knife used by the criminal, the items in question were similar to those used and they were found in the street along the route which appellant took as he ran away from the crime scene and into the bar where he was arrested. We agree with the trial court that these facts are sufficient to establish the relevance and hence the admissibility of the two exhibits. The fact that they could not be identified positively as those involved in the crime went to the weight of the evidence and was properly left to consideration by the jury.

Judgment of sentence affirmed.