768 A.2d 309

COMMONWEALTH of Pennsylvania, Appellee,

v.

Danny ANDREWS, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 18, 2000.

Decided March 26, 2001.

John W. Packel, Owen Larrabee, Philadelphia for Danny Andrews.

Anya K.R. Rosin, Catherine Marshall, Philadelphia, for Com.

Before: FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, and SAYLOR, JJ.

## OPINION

SAYLOR, Justice.

In this case, we address the propriety of imposing separate consecutive sentences for multiple counts of criminal conspiracy and possessing an instrument of crime, resulting from related robberies.

Relevant to this inquiry, Appellant, Danny Andrews ("Andrews"), and his co-defendant, Wendell Johnson ("Johnson"), appeared at the rental office for the Garden Court Apartments at approximately 1:00 p.m. on November 27, 1990, asking to see apartments. After taking a tour with one of the rental agents, Andrews and Johnson left the building without incident. On the same day, at approximately 3:00 p.m., Andrews and Johnson entered the rental office of the Brynfield Court apartment building and inquired about leasing an apartment. When the owner of the building asked Andrews and Johnson what type of apartment they desired and to whom it would be leased, she received vague answers. Feeling uncomfortable, the owner attempted to radio the building superintendent, at which point Johnson brandished a handgun and Andrews confronted the building's general manager, who was also present. Andrews and Johnson directed the victims to a back office, ordered them to lie on the floor, and removed their jewelry. After repeatedly demanding the location of the safe, and being told that the office did not have one, Andrews and Johnson asked for the victims' pocketbooks and bound the victims' arms.

On November 28, 1990, at approximately 1:00 p.m., Andrews and Johnson returned to the Garden Court Apartments and asked about renting an apartment, indicating that they had spoken to a rental agent the previous day. Shortly after they were asked to complete a rental application, one of the individuals approached the property manager with his gun drawn. Andrews and Johnson forced the victim into a vault inside the office, demanded cash, and removed her watch and necklace. As was the case with the Brynfield Court robbery, the victim was told to lie on the floor and her hands were tied. Later the same day, at approximately 3:00 p.m., Andrews and Johnson inquired about rental possibilities at the Korman Suites apartment complex, where a leasing agent showed them a sample apartment. Upon returning to the rental office, Andrews and Johnson drew their guns, took jewelry and money from the agent and three office workers, forced them to lie on the floor, and then bound their legs.

Andrews drove from the scene, making an illegal turn as he and Johnson left the apartment complex. A police officer observed the infraction, and a chase ensued, with Andrews and Johnson eventually abandoning their vehicle and fleeing on foot. They were apprehended shortly thereafter and returned to the scene, where they were identified by one of the victims. A search of the perpetrators' vehicle revealed evidence linking them to the Garden Court and Korman Suites robberies. In addition, police recovered a revolver and a semi-automatic pistol, which matched the description of the handguns used during those robberies.

Andrews and Johnson were charged in separate criminal informations with armed robberies of the office workers at the three apartment buildings. The informations treated the crimes not as a continuing event but as individual incidents; thus, each defendant was charged with three counts of criminal conspiracy and three counts of possessing an instrument of crime related to each of the incidents. Concerning the conspiracy counts, the Commonwealth alleged as criminal objectives, *inter alia*, robbery and possession of an instrument of crime, and both informations included as an overt act posses-

sion of a gun.[1] Prior to trial, the Commonwealth petitioned to consolidate the offenses and to have Andrews and Johnson tried together. In its petition, the Commonwealth alleged that Andrews and Johnson were co-conspirators, who participated jointly in a continuing series of acts over a twenty-six-hour period, and that the same evidence was applicable to each defendant. In addition, the Commonwealth averred that the robberies were perpetrated in a similar manner, namely, that Andrews and Johnson entered apartment rental offices posing as potential tenants and, after making inquiries regarding the apartments, brandished handguns, ordered the workers to lie on the floor, bound them, and stole personal effects and money. This similarity was equated with a *modus operandi*, which tended to establish the identity of the perpetrators. The Commonwealth's petition was granted, and the case proceeded to a jury trial.

At trial, Andrews' defense sought to challenge the accuracy of the identification evidence based upon certain inconsistencies. During his closing argument, counsel for Andrews argued that the robberies were not part of a common plan or scheme and were not connected. In response, the Commonwealth argued that the overlapping evidence from the robberies, in conjunction with the distinct manner in which the crimes were committed, constituted a *modus operandi* that was akin to a signature demonstrating the identity of the perpetrators. Notably, Andrews did not request a jury instruction as to whether the evidence supported a finding of multiple conspiracies or a single conspiracy with multiple objectives. The jury convicted Andrews and Johnson each of five counts of robbery, two counts of criminal conspiracy, and two counts of possessing an instrument of crime, relating to the Garden Court and Korman Suites robberies; they were acquitted of the offenses stemming from the Brynfield Court robbery.[2]

1. Criminal conspiracy requires proof of intent to promote or facilitate a crime, agreement to commit or aid in the commission of an unlawful act, and an overt act in furtherance thereof. *See* 18 Pa.C.S. § 903(a), (c).

2. Perhaps since his focus at this juncture is upon establishing a single conspiracy rather than defending against each incident, the statement

Andrews filed post-verdict motions, which included a claim that the charges were improperly joined.[3] He did not, however, challenge the multiple convictions for conspiracy and possessing an instrument of crime. The trial court denied the motions, reasoning, with regard to the joinder claim, that the robberies reflected a common scheme or plan, thus providing a basis for consolidation. Andrews was sentenced to an aggregate term of imprisonment of 65 to 130 years, following which he sought reconsideration, claiming that the sentence was excessive. This request was also denied.

On appeal, the Superior Court agreed with the trial court that the robberies were properly joined, as the offenses "were sufficiently interrelated so as to constitute evidence of a common scheme, plan or design." *See Commonwealth v. Andrews*, 434 Pa.Super. 682, 641 A.2d 1218 (1993) (table), *appeal denied*, 538 Pa. 639, 647 A.2d 895, *cert. denied*, 513 U.S. 1021, 115 S.Ct. 588, 130 L.Ed.2d 502 (1994). However, the Superior Court vacated the judgment of sentence and remanded for re-sentencing, citing the trial court's failure to refer to the applicable sentencing guideline ranges. On remand, Andrews was re-sentenced to the same term of imprisonment. Andrews again sought reconsideration, alleging, *inter alia*, that the court should arrest judgment on one count each of possessing an instrument of crime and criminal conspiracy, as sentencing on these charges violated the doctrine of merger and due process principles because the Commonwealth prosecuted the crimes as one continuing transaction. The trial court denied the motion, and Andrews appealed.

A divided panel of the Superior Court affirmed in a published opinion. *See Commonwealth v. Andrews*, 720 A.2d 764 (Pa.Super.1998). Addressing Andrews' claim as one that implicated the legality of his sentence,[4] the majority reasoned

of facts in Andrews' brief concedes his involvement in the Brynfield Court robbery; thus, our factual recitation tracks such concession.

3. Andrews' conviction occurred prior to the promulgation of Criminal Procedural Rule 1410, which, *inter alia*, modified the timing for post-trial procedures to follow sentencing and made the submission of post-sentence motions optional.

4. The Superior Court noted that Andrews had not raised this claim before the trial court, but that such default did not constitute a waiver,

that, although the crimes were consolidated for trial because of their similarity, the concept of consolidation is distinct from that of merger. *See id.* at 769. In this regard, the majority noted that consolidation focuses only upon whether evidence of one crime would be admissible in a separate trial for the other, whereas the doctrine of merger is a rule of statutory construction designed to determine whether the General Assembly intended the punishment for one offense to encompass that for another. *See id.* Thus, the majority concluded that, while joinder was appropriate because of the similarity of the crimes, the robberies did not constitute an overlapping common scheme, and therefore it was proper to impose separate sentences for each count of conspiracy and possessing an instrument of crime, since the charges involved separate robberies of different individuals at different locations. *See id.* Likewise, the majority held that double jeopardy principles were not violated, as the convictions were for different offenses. *See id.*

The dissent noted that, while a defendant challenging the imposition of multiple sentences on the basis that he committed only one offense should ordinarily raise the issue through a sufficiency of the evidence claim, precedent existed for addressing such issue through a challenge to the legality of the sentence. *See id.* at 772 (Brosky, J., dissenting). In this case, the dissent reasoned that, "given the short time between robberies, it strains logic to suggest that both robberies were not the result of a single criminal conspiracy." *See id.* at 773. Furthermore, the dissent viewed this rationale as even stronger in the context of the offense of possessing an instrument of crime, since "possession is a continuing status." *See id.* This Court allowed appeal, limited to the propriety of imposing separate sentences on each of the two counts of conspiracy and possessing an instrument of crime.

since the legality of a sentence can be raised at any time. *See id.* at 769 n.7. As Andrews' second motion for reconsideration of sentence included this claim, the Superior Court's reference presumably relates to the initial sentencing.

I.

■ As a preliminary matter, Andrews frames his claim as involving the legality of the sentence, namely, the power of the court to impose double punishment for the same offense. Consequently, Andrews asserts that his failure to raise the issue at the time of his initial sentencing does not constitute a waiver, as a challenge to the legality of a sentence may be raised at any time. *See generally Commonwealth v. Vasquez,* 560 Pa. 381, 387, 744 A.2d 1280, 1283 (2000). The Commonwealth does not contend that Andrews has waived his claim; however, it does take issue with the manner in which the issue is framed. In this regard, the Commonwealth asserts that Andrews is actually arguing that he was improperly convicted and, therefore, his claim is more properly styled as a challenge to the sufficiency of the evidence.

■ Whether single or multiple conspiracies exist has been viewed in some cases as implicating the legality of the sentence imposed. *See, e.g., Commonwealth v. Rippy,* 732 A.2d 1216, 1224–25 (Pa.Super.1999) (relying upon merger principles in stating that the issue involves the legality of sentence).[5] The issue has also been treated, however, as a challenge to the sufficiency of the evidence. *See, e.g., Commonwealth v. Herrick,* 442 Pa.Super. 412, 419, 660 A.2d 51, 55 (1995).[6] Notably, other jurisdictions have acknowledged a similar conflict in their jurisprudence. *See, e.g., Thacker v. State,* 709 N.E.2d 3, 7–8 (Ind.1999); *State v. Orgain,* 115 N.M. 123, 847 P.2d 1377, 1381 (1993). Our analysis therefore begins with the proper characterization of the claim.

■ Andrews raises both constitutional (double jeopardy) and statutory grounds in his argument. Concerning the constitutional component, the double jeopardy prohibition against

5. *See also Commonwealth v. Larsen,* 452 Pa.Super. 508, 536, 682 A.2d 783, 797 (Pa.Super.1996) (addressing the issue as a challenge to the legality of sentence); *Commonwealth v. Scatena,* 332 Pa.Super. 415, 443, 481 A.2d 855, 869–70 (1984) (referencing, *inter alia,* double jeopardy principles), *rev'd on other grounds,* 508 Pa. 512, 498 A.2d 1314 (1985).

6. *See also Commonwealth v. Troop,* 391 Pa.Super. 613, 622–24, 571 A.2d 1084, 1089–90 (1990).

multiple punishment for the same offense serves to "prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). As a result, such challenges have been treated as implicating the legality of the sentence. *See Commonwealth v. Gillespie,* 512 Pa. 349, 355, 516 A.2d 1180, 1183 (1986) (plurality opinion). Issues concerning multiple punishment generally arise from a single act that results in a violation of two penal provisions, with the applicable double jeopardy analysis focusing upon a comparison of the elements of each offense to determine "whether each provision requires proof of a fact that the other does not." *See Commonwealth v. Houtz,* 496 Pa. 345, 348, 437 A.2d 385, 386–87 (1981) (citations omitted). Here, by contrast, the double jeopardy claim centers upon whether Andrews committed more than one act and, in the case of the conspiracies, specifically, whether the robberies were the product of one agreement or two. The determination is thus fact driven. *See Commonwealth v. Koehler,* 558 Pa. 334, 371, 737 A.2d 225, 245 (1999), *cert. denied,* 531 U.S. 829, 121 S.Ct. 79, 148 L.Ed.2d 41 (2000). Regarding possession of an instrument of crime, the offense requires proof of possession of such instrument, coupled with an intention to employ it criminally. *See* 18 Pa.C.S. § 907(a). As with the conspiracy issue, therefore, the analysis must depend upon fact finding: it focuses upon Andrews' intent as demonstrated by the circumstances surrounding his possession to determine whether his repeated use of the firearm was the product of a singular criminal intent or reflective of multiple manifestations of intent associated with each act. *See infra.* Consequently, resolution of the double jeopardy issue is inextricably intertwined with the sufficiency of the evidence.

The statutory grounds implicated in Andrews' argument are twofold. First, as noted, the Superior Court has evaluated the multiple conspiracy issue in terms of sentencing merger. *See, e.g., Rippy,* 732 A.2d at 1224–25. Indeed, Andrews advanced the merger doctrine in his Superior Court appeal. *See Andrews,* 720 A.2d at 769. Although claims involving the com-

mon law doctrine of merger have been viewed as implicating the legality of a sentence, *see, e.g., Commonwealth v. Campbell,* 351 Pa.Super. 56, 63, 505 A.2d 262, 265 (1986) (*en banc*), the doctrine is a rule of statutory construction, and the analysis is the same as that for double jeopardy, requiring a comparison of the elements of the pertinent offenses. *See Commonwealth v. Anderson,* 538 Pa. 574, 577, 580, 650 A.2d 20, 21, 23 (1994). Most important, merger applies only in the context of greater and lesser included offenses, *see id.,* and the present issue concerns proof of separate offenses, neither of which is a constituent of the other.[7]

Andrews' remaining statutory ground is founded upon Section 903(c) of the Crimes Code, 18 Pa.C.S. § 903(c), which contemplates the existence of a single conspiracy with multiple objectives, providing that:

If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple objectives are the object of the same agreement or continuous conspiratorial relationship.

18 Pa.C.S. § 903(c). This subsection reflects the fact that "the conspiracy is the crime, and that [it] is one, however diverse its objects." *Braverman v. United States,* 317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942) (citations omitted).[8] By its terms, Section 903(c) implicates a factual assessment of either the conspiratorial agreement or the relationship of the conspirators. *See generally Koehler,* 558 Pa. at 371, 737 A.2d at 245 (concluding that the evidence indicated separate agree-

7. In this same vein, although Section 906 of the Crimes Code, 18 Pa.C.S. § 906, bars multiple convictions for certain inchoate crimes (criminal attempt, solicitation, and conspiracy), its application is limited to "conduct designed to commit or to culminate in the commission of the same crime."

8. While this provision operates to a defendant's advantage with respect to multiple convictions and cumulative sentencing, it also advantages the Commonwealth for purposes of co-conspirator accountability, admissibility of hearsay declarations, satisfaction of overt act requirements, statute of limitations, and rules governing venue and jurisdiction. *See generally* MODEL PENAL CODE § 5.03 explanatory note (Official Draft 1962); 5 SUMMARY OF PENNSYLVANIA JURISPRUDENCE, § 32:41 (2nd ed.2000).

ments). Moreover, federal cases addressing claims of single versus multiple conspiracies have characterized the issue as factual, reviewing it as a matter involving the sufficiency of the evidence. *See generally United States v. Smith,* 789 F.2d 196, 200 (3d Cir.1986). Indeed, in federal court, the issue is submitted to the jury with an appropriate instruction. *See generally United States v. Slaughter,* 128 F.3d 623, 629 (8th Cir.1997); *United States v. Curran,* 20 F.3d 560, 572 (3d Cir.1994).[9] Other jurisdictions have also treated this issue as a fact question for the jury, evaluating it in terms of the sufficiency of the evidence. *See generally State v. Ellis,* 657 So.2d 341, 362 (La.App.1995); *Commonwealth v. Cerveny,* 387 Mass. 280, 439 N.E.2d 754, 759 (1982); *State v. Ball,* 268 N.J.Super. 72, 632 A.2d 1222, 1241 (1993), *aff'd,* 141 N.J. 142, 661 A.2d 251 (1995); *State v. Rozier,* 69 N.C.App. 38, 316 S.E.2d 893, 903 (N.C.App.1984); *Williams v. Commonwealth,* 12 Va.App. 912, 407 S.E.2d 319, 322 (1991).[10] While the circumstance involving multiple convictions and sentences for possessing instruments of crime has not been similarly addressed, as noted, that inquiry is essentially dependent upon the facts as well.

Thus, we agree with the Commonwealth that the issue is more properly presented as a challenge to the sufficiency of the evidence, with the facts being reviewed in the light most favorable to the verdict winner. *See, e.g., Koehler,* 558 Pa. at 371 n. 33, 737 A.2d at 245 n. 33. As such, the issue should be submitted to the jury in the first instance together with an appropriate instruction.[11] Nevertheless, as existing precedent

9. In federal court, the issue frequently arises in the context of a defendant's effort to disprove his involvement in a larger conspiracy and/or demonstrate a variance between the proof at trial and the indictment. *See generally United States v. Townsend,* 924 F.2d 1385, 1389 (7th Cir.1991).

10. *But see State v. Judy,* 179 W.Va. 734, 372 S.E.2d 796, 799 (1988) (framing a claim involving multiple conspiracies as an issue of double jeopardy, although addressing it as a question of fact to be determined under the totality of the circumstances).

11. For example, in federal court, an instruction defining a single conspiracy includes the following:

supported the manner in which Andrews raised the claim, and as the Commonwealth is not asserting waiver, we will proceed to address the claim on its merits. *See generally Yudacufski v. Commonwealth, Dep't of Transp.*, 499 Pa. 605, 609–09, 454 A.2d 923, 925 (1982) (concluding that, as the proper manner for preserving the issue was not explicit in either the rules or the cases, the issue was not waived).

## II.

The parties' arguments reflect the different viewpoints of the Superior Court majority and dissent. Andrews argues that "principles of statutory reference" and double jeopardy require that the inchoate offenses of conspiracy and possessing an instrument of crime each be treated as a single continuing offense. Emphasizing the Commonwealth's theory at trial and the basis for its successful petition to consolidate, Andrews submits that the robberies were part of a continuous, overlapping common plan or scheme stemming from a single conspiratorial agreement with multiple objectives. Similarly, Andrews urges that possession of an instrument of crime is a continuing offense, particularly where the crimes are part of a single plan with multiple objectives.

For its part, the Commonwealth maintains that, while the offenses constituted a common plan or scheme for purposes of joinder, they were distinct, occurring at different apartment buildings, in different sections of Philadelphia, and separated by three hours. To constitute a single conspiracy, according to the Commonwealth, the crimes would need to share the same location, time, and victims, or involve a criminal act that was a necessary intermediate step to committing a later crime.

> In determining whether or not any single conspiracy has been shown by the evidence in the case you must decide whether common, master, or overall goals or objectives existed which served as the focal point for the efforts and actions of any members to the agreement. In arriving at this decision you may consider the length of time the alleged conspiracy existed, the mutual dependence or assistance between various persons alleged to have been its members, and the complexity of the goal(s) or objective(s) shown.
>
> KEVIN F. O'MALLEY ET AL., FEDERAL JURY PRACTICE AND INSTRUCTIONS § 31.09 (5th ed.2000).

The Commonwealth argues that such facts are not present in this case, thus warranting separate convictions. The Commonwealth also asserts that Andrews was properly convicted of two counts of possessing an instrument of crime, as he possessed the specific intent to employ the instrument criminally at each apartment complex.

### A.

In general, criminal conspiracy requires proof of an agreement with another person to commit a crime, combined with the intent to promote or facilitate such commission. *See* 18 Pa.C.S. § 903(a). Because of the difficulties associated with proving an actual conspiratorial agreement, in the absence of testimony from one of the conspirators, the Commonwealth is not required to establish the existence of an explicit or formal agreement with direct proof and may, instead, rely upon circumstantial evidence. *See Commonwealth v. Roux*, 465 Pa. 482, 487–88, 350 A.2d 867, 870 (1976) (providing that a conspiracy may be inferentially demonstrated by showing the "relation, conduct, or circumstances of the parties, and the overt acts on the part of co-conspirators"). As with determining the existence of an agreement, ascertaining the scope of such agreement involves difficulties of proof. *See generally Commonwealth v. Savage*, 388 Pa.Super. 561, 571, 566 A.2d 272, 276 (1989). In this case, there was no direct evidence concerning the actual agreement or its scope; rather, the Commonwealth relied upon circumstantial proof to establish an understanding between Andrews and Johnson. *Cf. Troop*, 391 Pa.Super. at 624, 571 A.2d at 1090 (concluding that multiple conspiracies existed based upon co-conspirator testimony concerning separate agreements to commit the crimes).

Recognizing this problem, the explanatory note for Section 5.03(3) of the Model Penal Code (Conspiracy with multiple criminal objectives), from which Section 903(c) is derived, states:

The only difficulty that may arise in such cases is in determining whether different objectives executed over a

period of time were implicit in the same 'agreement.' Insofar as this requires inquiry into the precise time at which each objective was conceived, it is unrealistic and serves no useful purpose; indeed a finding of separately punishable conspiracies if the objectives were conceived at different times 'tends to place a premium upon foresight in crime.' The courts generally avoid such inquiries and results by finding that the original agreement subsequently came to 'embrace' additional objects. *The Code provision avoids them more directly by its alternative test of whether all the crimes were the object of the same 'continuous conspiratorial relationship.' This criterion focuses on the more significant question whether there was a single and continuous association for criminal purposes.*

MODEL PENAL CODE § 5.03 explanatory note (emphasis added).

Absent evidence respecting the scope of an agreement, therefore, the issue may be decided by the alternate test under Section 903(c), namely, whether the robberies resulted from a "continuous conspiratorial relationship." In resolving such claims, this Court has endorsed a multi-factor totality test, focusing upon:

The number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and the degree to which interdependence is needed for the overall operation to succeed.

*Koehler,* 558 Pa. at 371, 737 A.2d at 245 (quoting *Commonwealth v. Davis,* 704 A.2d 650, 654 (Pa.Super.1997)).

■ Here, the assessment of the sufficiency of the evidence is colored and, to some degree, complicated by a number of factors. Initially, as noted, the fact finder was not oriented to the issue; indeed, the trial court's instructions for conspiracy failed to distinguish the individual counts. The verdict slip, however, contained separate entries for each conspiracy charge. Of additional significance, the criminal informations

charging the conspiracies did not differentiate as objectives the specific robberies, instead listing, *inter alia*, robbery generally as an objective. While each of the above factors represents a potential, serious flaw in the manner in which trial was conducted, Andrews has not raised an issue of trial error, and our review is thus limited to determining whether there is evidence of record from which the jury could conclude that the robberies were the product of separate agreements.[12]

In this regard, viewing the record in the light most favorable to the Commonwealth, there is adequate support in the record for the jury's verdict. As the Commonwealth notes, the crimes involved different victims, were carried out at different apartment buildings, in different parts of the city, and were separated by three hours. In addition, the crimes were not interdependent, as where one offense is a "necessary intermediate step" to committing a later offense. *See, e.g., Commonwealth v. Richbourg,* 260 Pa.Super. 438, 446, 394 A.2d 1007, 1011 (1978) (concluding that one conspiracy existed where a robbery was committed for the purpose of obtaining keys to a restaurant that was later burglarized). From such evidence, the jury could have inferred that the crimes were the product of separate agreements. While there are also facts indicating a continuous conspiratorial relationship, namely, common objectives and overt acts,[13] an identity of the individuals perpetrating the crimes, and only a brief period

12. Enforcement of waiver principles in this context is appropriate since, for example, counsel may have opted, for tactical reasons, to forgo both an objection to the prosecution based upon the contents of the informations and a request for a single conspiracy instruction, as the defense theory sought to portray the crimes as individual incidents, thereby enhancing the likelihood of acquittal of particular incidents based upon identification problems. Indeed, such theory was ultimately successful with respect to the Brynfield Court robbery.

13. Contrary to Andrews' contention, the Commonwealth did not assert the existence of an overarching common plan or scheme; rather, this rubric was employed by the trial court and the Superior Court during Andrews' initial appeal in describing the evidence relevant to identity, specifically, the method of operation involved in committing the robberies. *See generally* Leonard Packel and Anne Poulin, Pennsylvania Evidence, § 404–9 at 195–96 (2nd ed.1999) (noting that "courts have often used 'common scheme' as an umbrella term that encompasses cases in which the evidence tended to prove plan or identity").

between the crimes, it is not an appellate court's function to reweigh the evidence and substitute its judgment for that of the jury. *See Commonwealth v. DeFrancesco*, 481 Pa. 595, 603, 393 A.2d 321, 325 (1978). Similarly, although sufficient evidence existed to warrant a single conspiracy instruction under Section 903(c), as noted, our review is limited to determining the sufficiency of the evidence supporting the verdict. Finally, we note that the pertinent question is not presented here in the form of a challenge to the weight of the evidence, through which the trial court's discretion could have been invoked to assess the persuasiveness of the evidence in terms of its support for the alternate conclusion of a single or multiple conspiracies. *See generally Commonwealth v. Widmer*, 560 Pa. 308, 319–20, 744 A.2d 745, 751–52 (2000) (differentiating challenges to the sufficiency of the evidence from those involving the weight of the evidence).

Thus, although the question is close, we conclude that the evidence is minimally sufficient to support the jury's verdict concerning multiple conspiracies.

## B.

Like conspiracy, possessing an instrument of crime is an inchoate offense derived from the Model Penal Code. *See* 18 Pa.C.S. § 907 official comment. The offense is defined, in relevant part, as follows:

**Possessing instruments of crime.**

**(a) Criminal instruments generally.**—A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

18 Pa.C.S. § 907(a). Andrews maintains that possession is a continuous event, and that his use of a handgun during each robbery did not alter this fact. In support of such theory, Andrews draws a parallel to firearms offenses, citing to *Commonwealth v. Woods*, 710 A.2d 626 (Pa.Super.), *appeal denied*, 556 Pa. 709, 729 A.2d 1129 (1998). In *Woods*, the defendant perpetrated a series of assaults following a vehicle accident and was convicted, *inter alia*, of two counts of violating

Section 6108 of the Uniform Firearms Act, 18 Pa.C.S. § 6108, which prohibits carrying a firearm on the public streets or property of a city of the first class. *See id.* at 631. Reasoning that under Section 6108 the crime is complete upon carrying a weapon on a public street, regardless of whether it is used in the commission of a crime, the court concluded that such possession represents a single offense. *See id.; accord Commonwealth v. Brandrup,* 244 Pa.Super. 144, 149, 366 A.2d 1233, 1234 (1976) (holding that the crime of former convicts not to own or possess a firearm is a continuing offense).

 In contrast to the firearm offense at issue in *Woods,* "it is the actor's criminal purpose that provides the touchstone of his liability" for possessing an instrument of crime. MODEL PENAL CODE § 5.06 comment; *see also Commonwealth v. Hardick,* 475 Pa. 475, 478–80, 380 A.2d 1235, 1236–37 (1977). Such purpose may be inferred from the circumstances surrounding the possession. *See Commonwealth v. Moore,* 476 Pa. 19, 21, 381 A.2d 845, 845 (1978). Thus, use of a firearm in committing an offense bears upon the element of intent and weighs against Andrews' argument. Here, however, Andrews was also convicted of conspiracy, which required proof of his intent to commit a crime. *See* 18 Pa.C.S. § 903(a). As noted, there was sufficient evidence from which the jury could infer that the robberies stemmed from separate agreements; correspondingly, there is sufficient evidence from which the jury could conclude that Andrews' intention to employ the firearm criminally was also separately developed as part of each conspiratorial agreement.

Accordingly, we affirm the order of the Superior Court.

Justice ZAPPALA concurs in the result.