**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Maurice WOODS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 1998.
Filed April 21, 1998.

Jerome M. Brown, Philadelphia, for appellant.

Peter J. Gardner, Assistant District Attorney, Philadelphia, for Com., appellee.

Before TAMILIA, ORIE MELVIN and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from a judgment of sentence imposed upon appellant after he was convicted in a jury trial of two counts of aggravated assault, one count of robbery, one count of criminal conspiracy and two counts of possessing a weapon on the streets. Appellant raises three allegations of ineffective assistance of counsel—in not calling a defense witness, in not challenging the sufficiency of the evidence and in not objecting to the court's charge on aggravated assault—and also argues that the court erred in not giving an inconsistent statement charge and that appellant unlawfully received two sentences for possessing a firearm. We affirm in part and reverse in part.

On August 13, 1992, Darryl Grant and his family were traveling on Roosevelt Boulevard when a red station wagon driven by appellant struck the rear of the Grants' vehicle. Despite the impact both vehicles continued on without stopping. Shortly thereafter appellant passed Mr. Grant's vehicle and in the process scraped the side of it which caused the side view mirror to be knocked off. Again appellant did not stop his vehicle. Consequently, Mr. Grant followed appellant as he turned onto Third Street. Appellant finally stopped his vehicle and Mr. Grant pulled up nearby, exited his vehicle and approached appellant's vehicle. As Mr. Grant neared the vehicle an unidentified passenger in appellant's vehicle got out of the car and approached Mr. Grant who had asked appellant for his insurance information. Appellant fumbled around inside the vehicle as if looking for something then suddenly opened the door and stepped out holding a pistol which he discharged three times in Mr. Grant's direction inflicting three gunshot wounds to Mr. Grant's abdominal region. Appellant and his passenger then reentered the vehicle and sped off.

Shortly after the assault on Mr. Grant occurred Julius Lewis was driving southbound on the Roosevelt Boulevard extension of the Schulykill Expressway when he observed a red station wagon ahead of him emitting smoke or steam from under its hood. As Mr. Lewis' vehicle approached the red station wagon it swerved into Mr. Lewis' lane forcing him off the road and into a ditch. As Mr. Lewis attempted to drive out of the ditch appellant approached and asked him if he was all right. Appellant then attempted to open the door of the car but, upon failing, discharged his weapon twice into the passen-

ger section of the vehicle instead. Appellant and his cohort then forced Mr. Lewis from his vehicle, climbed in and sped away.

When the police arrived they found the red station wagon, which matched the description of the vehicle involved in the other episode, and two bullet casings which matched casings found at the other scene and which were later determined to have been fired from the same gun. On August 17, 1992, Mrs. Grant picked appellant's picture from a photo array and both she and Mr. Grant later identified appellant from separate lineups conducted months apart. Mr. Lewis likewise identified appellant from a lineup conducted two months after the incident. Appellant was tried and convicted in a jury trial before Judge John J. Chiovero in December of 1993. Post-trial motions were denied on October 12, 1994, and an appeal was taken but later dismissed when appellant's counsel failed to file a brief. On July 22, 1996, appellant filed a PCRA petition seeking a reinstatement of his appellate rights, which was later granted. Appellant's current counsel was then appointed and the present appeal was filed.

█ Much of appellant's argument revolves around a potential self-defense or justification defense. Appellant argues that Mr. Grant was confrontational and appeared violent when he approached him and that appellant believed Mr. Grant might be ready to pull a weapon from his waistband. Along this line of reasoning appellant argues that trial counsel was ineffective in failing to call a witness that would have bolstered this self-defense or justification defense. We disagree. To establish ineffective assistance of counsel due to a failure to call a witness a defendant must establish that the witness existed and was available, that counsel was informed of the witness's existence, that the witness was ready and willing to testify and that the absence of the witness prejudiced the defendant to a point where the defendant was denied a fair trial. *Commonwealth v. Gonzalez*, 415 Pa.Super. 65, 608 A.2d 528 (1992). Since appellant argues that the witness in question, Sekina Squarrel, would have bolstered a defense of justification/self-defense, we must further examine the requirements for establishing this defense in order to evaluate the ineffectiveness claim.

█ In order to prevail on a theory of self-defense the defendant must establish the following: that he reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force to prevent the harm; that he was free from fault in provoking the confrontation which precipitated the use of deadly force; and that he did not violate a duty to retreat. *Commonwealth v. Samuel*, 527 Pa. 298, 590 A.2d 1245 (1991). Appellant has provided affidavits which indicate that a witness exists, Ms. Squarrel, which would have testified that Mr. Grant was angry and threatening when he approached appellant's car. As noted above, appellant contends that he could have built a self-defense/justification defense from this evidence. However, appellant's proffer also indicates that at the time of the actual shooting Ms. Squarrel was running away from the scene. As such, there is no indication that she, or anyone else for that matter, would testify that Mr. Grant was armed or took any other threatening action immediately before the shots were fired. Further, even if appellant had, for some reason, believed Mr. Grant was hiding a gun in his waistband, as he argues, such a belief would not provide justification to shoot Mr. Grant **three** times in the abdomen [1] or explain appellant's failure to simply drive off as Mr. Grant approached. Consequently, we conclude that appellant has not established that counsel's failure to call Ms. Squarrel so prejudiced him that he was denied a fair trial.

█ Appellant also argues that the court erred in failing to give a prior inconsistent statement charge to the jury. We disagree. Consistent with the theme discussed above, appellant contends that Mrs. Grant gave a statement to the police that her husband had an argument with the appellant over appellant's hitting Mr. Grant's vehicle and that Mr. Grant was upset when he approached appellant. Appellant argues that this statement could have bolstered the self-defense argument and further contends that

---

1. Of course, any of the three bullet wounds could have supported the aggravated assault charge.

this provided a basis for an inconsistent statement charge. An inconsistent statement can be introduced, under certain circumstances, as substantive evidence. However, for an inconsistent statement to be utilized as substantive evidence it must be made under circumstances ensuring its reliability. *Commonwealth v. Lively,* 530 Pa. 464, 610 A.2d 7 (1992). According to *Lively* examples of such statements are those given under oath, those reduced to writing and adopted by the witness or a statement that is a contemporaneous verbatim recording of a witness's statement. Appellant has not demonstrated that the alleged inconsistent statement made by Mrs. Grant is of a kind approved under *Lively* to allow the statement to be considered substantive evidence and our discussion in the next section of the opinion demonstrates that it is not.

■ An inconsistent statement can also be admissible to impeach a witness' credibility. However, it must be established that the witness, in fact, made the allegedly inconsistent statement. *Commonwealth v. Brown,* 302 Pa.Super. 391, 448 A.2d 1097 (1982). In the present case upon cross-examination Mrs. Grant did not admit to making the statement characterized by appellant and appellant did not produce the officer Mrs. Grant allegedly made the statement to. Rather appellant interjected this issue through the testimony of another officer and an investigation form, which contained a summarization of Mrs. Grant's statement. Unfortunately for appellant, a summary of a witness' statement cannot be used for impeachment purposes absent adoption of the statement by the witness as his/her own. See, *Commonwealth v. Simmons,* 541 Pa. 211, 662 A.2d 621 (1995). Consequently, there was no basis for an instruction on inconsistent statements other than that which the court gave, which was that any inconsistency in testimony could be considered in determining the credibility of the witness' testimony.

■ Appellant next argues that counsel was ineffective for failing to preserve a sufficiency of the evidence challenge to the aggravated assault on Mr. Lewis. We disagree. The gist of appellant's argument is that the evidence was insufficient to prove a specific intent to cause serious bodily injury. One commits an aggravated assault if one "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Our cases have held that "attempt," for aggravated assault purposes, can be found where "the accused intentionally acts in a manner which constitutes a substantial or significant step toward perpetrating serious bodily injury upon another." *Commonwealth v. Lopez,* 439 Pa.Super. 625, 633, 654 A.2d 1150, 1154 (1995). Of course, as is the case with most criminal elements, the Commonwealth can establish intent from the circumstances. *Commonwealth v. Elrod,* 392 Pa.Super. 274, 572 A.2d 1229 (1990).

Appellant molds his argument from the circumstances that Mr. Lewis did not see appellant actually shoot at him and from the fact that appellant pulled Mr. Lewis from the vehicle without harming him after the shots were fired. From these facts appellant hypothesizes that the evidence only establishes appellant's intent to intimidate Mr. Lewis so that he could steal his vehicle. There are two facets of appellant's argument. Since Mr. Lewis did not see appellant actually point the gun at him it is not certain whether or not appellant was actually aiming at Mr. Lewis or was aiming at the windows in an effort to shoot them out. Secondarily, since appellant pulled Mr. Lewis out of the vehicle without harming him it is doubtful that appellant had an original intent to harm Mr. Lewis as he had ample opportunity after the windows were shot out to injure Mr. Lewis.

■ Appellant may be correct that appellant wished only to intimidate Mr. Lewis and did not possess a specific intent to harm him. Nevertheless, this is more properly an argument of factual inference which can be addressed to a jury, which is in turn free to agree or disagree with it. As far as the sufficiency of the evidence is concerned *Commonwealth v. Hunter,* 434 Pa.Super. 583, 644 A.2d 763 (1994), makes clear that a specific intent to injure can be inferred from the circumstances of firing a gun into an occu-

pied house. We see no reason why the same rule of law would not apply to the firing of a weapon into an occupied vehicle. In short, the jury was certainly entitled, although not required, to find the necessary intent to support an aggravated assault charge from the fact that appellant fired his weapon into Mr. Lewis' vehicle while he occupied it. As such, the sufficiency of the evidence challenge is without merit and counsel cannot be found ineffective for failing to pursue a meritless argument.

 Appellant next argues that counsel was ineffective for failing to object to an erroneous charge on the elements of aggravated assault. Since we conclude that the charge was not defective the claim of ineffectiveness must fail. Appellant underlines the following language in the court's charge: "[I]n order to find that the defendant attempted to cause serious bodily injury, you must find that he engaged in conduct which constitutes a substantial step toward causing such serious bodily injury to another." Appellant contends that this language does not adequately convey the burden with respect to the specific intent requirement. However, immediately following the language just quoted the following language was utilized: "[a] person acts intentionally with regard to serious bodily injury when it is his conscious object, for purposes [sic] to cause such injury." This language conveys the concept that a perpetrator of aggravated assault is one whose "conscious object" is to cause serious injury to another. In our opinion "conscious object" is tantamount to "specific intent." Consequently, we perceive no deficiency in the charge.

 Appellant lastly argues that he was improperly sentenced for two violations of the Uniform Firearms Act as his continuous act of carrying a firearm constituted only one offense of that Act and not two. We agree. Appellant was sentenced to two (2) two-and-one-half to five-year sentences for two violations of 18 Pa.C.S.A. § 6108 which states:

> no person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a

city of the first class unless: (1) such person is licensed to carry a firearm; or (2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

It is important to point out that the violation of the Firearms Act was separate and apart from appellant's usage of the firearm in the assaults. That is to say, appellant would have been guilty of violating § 6108 by carrying a weapon regardless of whether or not he used the weapon in the commission of a crime. Logically speaking then, the Commonwealth's decision to charge him with two violations of this section is wholly arbitrary.

Under § 6108 a crime is committed by carrying a weapon on a public street. In the context of an uninterrupted or continuous carrying of a weapon at what point does one stop "carrying" a firearm on the street and start anew? Does one commit a violation of the Act with every step he takes while carrying a firearm? Or does one commit a violation based upon a certain passage of time? If so, how much time must pass before a new offense begins? Is it a separate offense for every hour one carries a weapon? Or every ten minutes?

 The fact of the matter is there was no evidence to indicate that appellant carried the subject weapon in other than an uninterrupted fashion for the entire period encompassing the two assaults, as well an indeterminate period of time before and after the assaults. Since under the Act commission of the offense is not predicated upon the commission of a crime with the weapon the charging of two violations is no more logical than charging appellant for one offense every ten minutes, or every hour, or every step he took, while carrying a weapon. Although zealous District Attorneys might embrace such an interpretation of the Act we cannot. Since the offense is not linked to usage of the firearm in a separate crime appellant's "carrying" of the weapon must be construed, from a logical standpoint, to represent a single offense of the statutory prohibition against carrying a weapon upon the street.[2]

---

**2.** A useful analogy is conspiracy. A single conspiracy can involve the commission of several

Since appellant committed but one offense in carrying a weapon upon the streets, he cannot have two sentences imposed upon him for that violation.[3] As such, we reverse the second sentence imposed upon appellant for violation of 18 Pa.C.S.A. § 6108 at Bill number 4422.[4] In all other respects the judgment of sentence is affirmed.

Judgment of sentence at Bill no. 4422 reversed, affirmed in all other respects. Jurisdiction relinquished.

Joseph A. O'Keefe, Kutztown, for petitioner.

James L. Heidecker, Allentown, for respondent.

---

criminal offenses without changing the fact that there existed only a single conspiracy. Whether or not there is a single conspiracy or multiple conspiracies is not dependent upon the number of crimes committed. *See, Commonwealth v. Savage*, 388 Pa.Super. 561, 566 A.2d 272 (1989).

**3.** This position is further supported by *Commonwalth v. Brandrup*, 244 Pa.Super. 144, 366 A.2d 1233 (1976), which indicates that possession of a firearm is a continuing offense.

**4.** Appellant has not asked us to reverse the conviction at this number, nor did appellant raise a pre or post-trial motion challenging the multiple charging of this offense. Since appellant was convicted before January 1, 1994, he was required to file post-trial motions to preserve challenges to any pre-trial or trial errors. Nevertheless, appellant is free to challenge the sentence imposed as the multiple punishment for a single offense renders the sentence illegal.