COMMONWEALTH of Pennsylvania,
Appellee,

v.

Terrance Michael STENHOUSE, a/k/a
Terry Stenhouse, a/k/a Stenhouse Terrance, a/k/a Terrance Stenhouse, a/k/a
Terry Michael Stenhouse, Appellant.

Superior Court of Pennsylvania.

Argued April 5, 2001.

Filed Nov. 15, 2001.

Reargument Denied Jan. 25, 2002.

James R. Wilson, Public Defender,
Pittsburgh, for appellant.

Robert A. Willig, Assistant District Attorney, Pittsburgh for Com.

BEFORE: DEL SOLE, President
Judge, EAKIN and BROSKY, JJ.

EAKIN, J.:

¶ 1 Terrance Michael Stenhouse appeals
from the judgment of sentence entered
September 9, 1999. We affirm.

¶ 2 On September 18, 1998, police executed search warrants at two separate residences, looking for drugs belonging to

appellant. The police found heroin and cocaine, as well as marijuana and drug paraphernalia, at both residences. At a Hamilton Avenue address in the City of Pittsburgh, the search revealed marijuana, 2.84 grams of heroin, and 1.72 grams of cocaine. At a West Finley Drive address in Wilkinsburg, the search revealed marijuana, 24.171 grams of heroin, and 1.260 grams of cocaine.

¶ 3 Appellant was charged with multiple violations including two counts of possession and possession with intent to deliver cocaine, and two counts of possession and possession with intent to deliver heroin. Appellant pled guilty to all charges and was sentenced to an aggregate eight to twenty-six years incarceration with fines. Following a hearing, the court denied appellant's motion for a new trial. This appeal followed, in which appellant raises the following issues:

I.   Was the guilty plea rendered unknowing and involuntary by a defective colloquy which failed to establish a sufficient factual basis in support of the offenses charged?

II.  Did the trial court below err in not allowing the defendant to withdraw his guilty plea where the factual summary presented during the plea colloquy was inadequate to support the offenses to which he pled and plea counsel rendered ineffective assistance in allowing the entry of the unknowing and involuntary plea by not objecting to the defective colloquy?

Appellant's Brief, at 8.

¶ 4 "[B]efore accepting a plea of guilty, the trial court must satisfy itself that there is a factual basis for the plea." *Commonwealth v. Maddox*, 450 Pa. 406, 300 A.2d 503, 505 (1973) (citations omitted). "A factual basis for the plea is universally required." *Commonwealth v. Thompson*, 302 Pa.Super. 19, 448 A.2d 74, 75 (1982).

¶ 5 Appellant argues there is nothing in the record to indicate that more than a single possession and a single possession with intent to deliver occurred with respect to each drug. He contends this makes the guilty plea defective, such that he should be permitted to withdraw his plea and receive a new trial.

■ ¶ 6 Appellant argues it did not matter the drugs were in different locations because he had continuous and uninterrupted possession of a single quantity of drugs. Appellant does not cite any unique facts or authority to support this proposition. The factual basis for the plea shows absolutely no evidence of an original union of the disparate substances (cocaine, marijuana and heroin). There is no evidence the substances were procured at one time or from one source. If the different substances were purchased separately,[1] then appellant must have combined them before they were again divided. Either way, the propriety of multiple charges is determined by the facts at the time of the charge, not by history.

■ ¶ 7 Subdivision of a single quantity of drugs may not warrant separate charges in all cases. We must rely on trial courts to deal with the issue on a case-by-case basis, and cannot create a broad rule that covers every situation. We certainly cannot preclude multiple possessory crimes simply because drugs are fungible or sold from multiple outlets.

■ ¶ 8 Even accepting appellant's allegations as gospel, this was not merely

---

1.   Common sense tells us there is no wholesale supermarket for controlled substances, where a single source provides a dealer such as appellant with one-stop shopping for marijuana, heroin and cocaine; these three substances have different root sources.

repackaging and moving a portion of a larger mass to another bag or room. There are two locations here, in separate municipal jurisdictions, miles apart, and we can find no error in treating one stockpile as separate and distinct from the other. If appellant chose to have branch offices for his business, the inventory at each office may form the basis for a separate possessory crime. The record of the guilty plea hearing supports the conclusion that a factual basis existed for the plea.

¶ 9 The facts were sufficient to support the offenses to which appellant pled guilty; therefore, the learned trial court did not err in refusing to allow withdrawal of the guilty plea. As for appellant's ineffective assistance of counsel claim, "[t]rial counsel could not object to an errorless colloquy; therefore, he acted effectively." *Thompson,* at 76.

¶ 10 Judgment of sentence affirmed.

¶ 11 BROSKY, J. files a dissenting Opinion.

BROSKY, J., dissenting:

¶ 1 I dissent. Appellant offers a rather interesting esoteric argument. If I understand Appellant's argument correctly, Appellant essentially asserts that "possession" is a continuing offense and is not logically or theoretically related to quantity, packaging, subdivision or location. Thus, Appellant asserts that, essentially, he was in "possession" of only one quantity of cocaine and heroin simultaneously, although housed at two separate locations. According to Appellant's argument, such circumstances would allow only a single conviction for the continuing "possession" and "possession with intent to deliver" of each controlled substance. As such, the factual predicate did not support the plea of guilty to two separate possession counts for each location. Since I agree, to a certain extent, with Appellant's proposition, I believe that the factual predicate set forth in the plea colloquy was inadequate and thus, Appellant should be entitled to withdraw his plea.

¶ 2 The continuing offense aspect of Appellant's argument is strongly supported by this Court's decision in *Commonwealth v. Woods,* 710 A.2d 626 (Pa.Super.1998), appeal denied, 556 Pa. 709, 729 A.2d 1129 (1998), which dealt with the offense of possessing a weapon on the streets or, otherwise stated, violating the Uniform Firearms Act (VUFA). *Woods* involved two separate shooting incidents that occurred in a short time-span. Among the various charges of which defendant-Woods was convicted were two counts of possessing a weapon on the streets. Not coincidentally, the two counts of this offense represented the number of shooting incidents that took place. Among Woods' challenges was one that 'he was improperly sentenced for two violations of the Uniform Firearms Act as his continuous act of carrying a firearm constituted only one offense of that Act and not two." *Id.,* 710 A.2d at 631. We agreed with that assertion and reversed the judgment of sentence imposed on one of the counts. Our discussion on the matter is rather instructive and, from a theoretical point of view, just as applicable to a possession of a controlled substance charge:

> It is important to point out that the violation of the Firearms Act was separate and apart from appellant's usage of the firearm in the assaults. That is to say, appellant would have been guilty of violating § 6108 by carrying a weapon regardless of whether or not he used the weapon in the commission of a crime. Logically speaking then, the Commonwealth's decision to charge him with two violations of this section is wholly arbitrary.

Under § 6108 a crime is committed by carrying a weapon on a public street. In the context of an uninterrupted or continuous carrying of a weapon at what point does one stop "carrying" a firearm on the street and start anew? Does one commit a violation of the Act with every step he takes while carrying a firearm? Or does one commit a violation based upon a certain passage of time? If so, how much time must pass before a new offense begins? Is it a separate offense for every hour one carries a weapon? Or every ten minutes?

The fact of the matter is there was no evidence to indicate that appellant carried the subject weapon in other than an uninterrupted fashion for the entire period encompassing the two assaults, as well an indeterminate period of time before and after the assaults. Since under the Act commission of the offense is not predicated upon the commission of a crime with the weapon the charging of two violations is no more logical than charging appellant for one offense every ten minutes, or every hour, or every step he took, while carrying a weapon. Although zealous District Attorneys might embrace such an interpretation of the Act we cannot. Since the offense is not linked to usage of the firearm in a separate crime appellant's "carrying" of the weapon must be construed, from a logical standpoint, to represent a single offense of the statutory prohibition against carrying a weapon upon the street. Since appellant committed but one offense in carrying a weapon upon the streets, he cannot have two sentences imposed upon him for that violation.

*Id.*, 710 A.2d at 631–32.

¶ 3 *Woods* would seemingly make clear that, logically enough, "possession" offenses punish the possession of something that is illegal to possess and operate independently of criminal episodes or other tangential or collateral factors. As such, Appellant's argument, upon its face, has considerable merit. Nevertheless, to answer the question put to us it is necessary to consider Appellant's argument in two contexts. First, where the controlled substances are acquired at different times, and, second, where they are acquired at the same time but split into two or more separate quantities, *i.e.*, stashes.

¶ 4 Considering the circumstance where contraband is acquired at different times, it would seem clear such a circumstance would support separate convictions. To hold otherwise we would have to conclude possession is a completely nebulous concept without time or space parameters. In this analysis, possession is simply a **status,** and nothing more. Once "in possession," that status would not change unless total dispossession subsequently occurred, even if the quantity of drugs varied like the Inventory of a department store. As such, under this theory the amount of drugs in one's possession could change, with numerous acquisitions of new narcotics, yet there would still only be one violation of this section of the Crimes Code.

¶ 5 From a logical perspective, this approach would seem to run afoul of the concept of completion. That is, once an individual possesses a quantity of prohibited narcotics, all necessary elements of the offense are present. As such, the crime is "complete" at that moment in time. Although, as long as an individual remains in possession of that illicit narcotic, he may be guilty of committing a single "continuing offense" of possession, since the crime is already "complete," a subsequent acquisition of another quantity of narcotics would ostensibly represent another, whole new offense of possession.

¶ 6 Indeed, *Commonwealth v. Grekis*, 411 Pa.Super. 494, 601 A.2d 1275 (1992), would seemingly dispel such a status interpretation. *Grekis* involved the crime of receiving stolen property (RSP), namely cigarettes. Grekis, the owner of The Quick Stop restaurant, was convicted of nineteen counts of receiving stolen property arising from a long running conspiracy wherein he purchased large quantities of stolen cigarettes from an individual named Lance Neuring for resale at the restaurant. Neuring acquired the cigarettes by breaking into various stores and stealing them. Neuring would then deliver the stolen cigarettes to the Quick Stop late at night. In addition to the nineteen counts of RSP, Grekis, was charged with nineteen counts of conspiracy. The Court found meritorious Grekis' argument that the evidence established only a single ongoing conspiracy to purchase and re-sell stolen cigarettes. However, the Court found Grekis' related argument, that he was similarly guilty of only one count of receiving stolen property, lacking in merit. In dispelling this argument, the Court stated that each instance in which stolen property was delivered and received constituted a separate offense of RSP. In similar logic, we see no reason why each individual acquisition of a quantity of narcotics would not represent a separate offense of possession of narcotics.

¶ 7 The above notwithstanding, with regard to the situation where an individual splits or subdivides a quantity of narcotics into smaller quantities, Appellant's argument has considerably greater logical appeal, even if the two or more quantities are then further "separated" and moved to geographically divergent locations. If a person acquired a certain quantity of narcotics, and if possession is a continuing offense and need not be actual, but rather can be constructive,[2] nothing about the aspect of "splitting" the originally acquired quantity into a greater number of smaller quantities would seem to change the original "possession" into multiple possession offenses. Although possessed in smaller quantities and, possibly, in separate locations, the "possession" of the controlled substance would remain continuous and uninterrupted. Stated alternatively, the party would never have dispossessed himself of the controlled substance; thus, there would be only one possession. In this respect, charging for possession based entirely on location has no greater logical soundness than does the charging of possession of a firearm based upon the number of times it was used criminally in *Woods*.[3] In both cases, a factor actually extraneous to the elements of the offense was called upon to determine the number of counts charged.

¶ 8 To illustrate the above point, consider a circumstance in which a person acquired a pound of marijuana packaged in a

---

2. In a somewhat ironic twist, the idea of constructive possession, a theoretical legal construct that is very prosecutorially friendly, aids Appellant's argument. Under the theory of "constructive possession," one can be found in possession of narcotics even when they are not on one's person. Indeed, as seen here, an Individual can be in "possession" of controlled substances even when they are not physically present at the location the controlled substances are found. Given the flexibility of the concept of constructive possession, it would seem much more likely from a theoretical point of view that one's possession of a controlled substance would remain uninterrupted from the date it was acquired until ingested or transferred to another.

3. This is not to say that as a matter of practicality, separate quantities of controlled substances found at separate locations should not be presumed to have been acquired at different times. However, this is merely a matter of proof. From a perspective of the elements of the crime, location is immaterial to the question of whether there has been single or multiple possessions.

single bag. It would seem that no one would assert the individual was guilty of more than one possession offense, albeit for a pound of marijuana. After all, if one were to suggest otherwise, how would one determine the number of possession offenses? Would one be guilty of a count of possession for each ounce of the larger package? For each potential "nickel bag," or "dime bag?" For each quarter-ounce? Would one be guilty of one count for each individual leaf of marijuana? Similarly, if the pound was split into 16 one-ounce baggies, all contained in a single, larger bag on the same coffee table, it would not seem that the individual had committed 16 separate possession offenses.[4] Further attenuating the circumstances, if the individual then hid the baggies in separate locations in the same abode; a bag under the kitchen sink, another in the sock drawer, one in the cookie jar—could it be argued that he had committed 16 separate offenses? From a perspective of legal theory, I see nothing in the act of separating the marijuana in that fashion that would convert a single possession into multiple possessions. Going a step further, if, after separating the marijuana into 16 parts, some of the bags were moved to the garage or the car or to another address or separate geographical location, would the answer be different? Again, considering legal theory alone, there is nothing to suggest that the individual's possession ever ended. Thus, there exists no reason to charge for separate possession offenses.

¶ 9 While dealing with a different, and less serious, violation of the law, *Commonwealth v. Garris*, 448 Pa.Super. 529, 672 A.2d 343 (1996), contains language echoing the analysis set forth above. There we stated:

" 'Continuing offenses' are proscribed activities that are of an ongoing nature and cannot be feasibly segregated into discrete violations so as to impose separate penalties." *Newcomer Trucking v. P.U.C.*, 109 Pa.Commw. 341, 531 A.2d 85, 87 (1987) (citation omitted). Instantly, without legislative guidance, it is impossible for us to segregate Garris's inactivity into separate violations of § 750.7. Any attempt to do so merely equates to an arbitrary judicial determination. Taken to its logical extension, the Commonwealth would have us find separate violations for every hour, minute or second that Garris had not obtained a permit. Appellee essentially requests that we re-write § 750.13 to read that the maximum penalty may be imposed "per day for each violation."

¶ 10 A similar analysis was applied in a receiving stolen property case by the Louisiana Supreme Court in the case of *State v. Schneller*, 199 La. 811, 7 So.2d 66 (1942), where the court stated:

It is clear that the defendant received and retained possession of the same alleged stolen property on one occasion only. While his unlawful possession continued over several days, he committed only one offense insofar as the particular merchandise is concerned. The unlawful possession of the goods by the defendant over a period of several days constituted a continuing offense and not a separate and distinct offense for each day that he retained the goods. Article 1306, Code of Criminal Procedure; R.S. 832, Act 72 of 1898.

¶ 11 Considering the above precedent I have to conclude that Appellant's contention is meritorious with respect to a situation where a single quantity of controlled

---

4. Indeed, the Commonwealth in the present case did not attempt to charge Appellant with more than one count of possession of each controlled substance per residence even though the drugs were subdivided or packaged into numerous small quantities.

substance is later subdivided, separated and moved to distinct locations.

¶ 12 In contrast to Appellant's argument, the Commonwealth's counter-arguments offer little in terms of legal theory, analysis or precedent. The Commonwealth states "it is precisely because appellant intentionally divided his drugs to make his operation more efficient and better protected that he is guilty of two sets of charges." Commonwealth's Brief, at 11.[5] The Commonwealth's assertion is wholly lacking in reliance upon legal principle or theory and bears no relation to the elements of the offense. In this respect, the Commonwealth calls upon nothing more than the principle of expediency and a sense that the "Appellant has broken the law, he should receive no benefit of the doubt." Needless to say, we find such an argument, the appeal to general sensibilities aside, unpersuasive.

¶ 13 Similarly, the Commonwealth quotes the following passage from *Commonwealth v. Williams*, 344 Pa.Super. 108, 496 A.2d 31, 42 (1985): "once a defendant commits an original crime, he is not permitted to compound the injuries he inflicts and then escape liability for additional crimes under the guise that they were all done in the same criminal transaction," as if this passage has applicability to the present case. However, in reality, if, as the above discussion demonstrates, possession is a continuing offense, Appellant's continued possession, even if in smaller and scattered quantities, constitutes a single crime. In fact, in an ironic twist, it is the Commonwealth, which quotes the above passage, that seeks to compound the criminal liability of Appellant under the given situation. The Commonwealth cites no provision of the crimes code that makes it illegal to subdivide illegally possessed narcotics, nor any governing legal principle,[6] yet would seek the imposition of multiple punishment for a single possession of narcotics.[7]

¶ 14 None of the above discussion is meant to sound determinative of the ultimate question, that being whether Appellant in fact split a quantity of illegal narcotics into smaller quantities while maintaining a single, uninterrupted possession. Nor is it meant to address the quantum of proof that might be necessary for the Commonwealth to prove that an individual's possession of two quantities of narcotics originated at different times, thereby allowing for the conviction on two counts of possession.[8] The above is simply meant to define, as clearly and correctly as possible, from a

5. The Majority echoes this sentiment stating: "Even accepting appellant's allegations as gospel, this was not merely repackaging and moving a portion of a larger mass to another bag or room. There are two locations here, in separate municipal jurisdictions, miles apart, and we can find no error in treating one stockpile as separate and distinct from the other. If appellant chose to have branch offices for his business, the inventory at each office may form the basis for a separate possessory crime." Majority Opinion, at 384–385.

6. As such, no additional "injury" to the Commonwealth accrues from the act of subdividing controlled substances.

7. Of course, most possession offenses are subject to mandatory minimum sentences which vary by the weight of controlled substance possessed. Hence, a single possession conviction of a larger amount of a controlled substance might result in the applicability of a higher mandatory minimum than would have been applicable to the two or more smaller quantities.

8. Our Supreme Court's decision in *Commonwealth v. Andrews*, 564 Pa. 321, 768 A.2d 309 (2001), might prove instructive in this regard.

theoretical standpoint, the legal parameters of possession offenses so it can be determined whether or not Appellant's plea to two counts of possession of each illegal substance was knowing. If Appellant and other pertinent players in the guilty plea process were operating under a misapprehension of law, then it is quite plausible that Appellant professed guilt to something of which he was not guilty or entered a plea while operating under a misapprehension of law.

¶ 15 Given my conclusion above, I believe it was error to deny Appellant's Motion for New Trial.[9] Appellant correctly recites the law to the effect that "a guilty plea should not be accepted if the facts do not support the plea." *Commonwealth v. Vaughn*, 459 Pa. 35, 326 A.2d 393, 394 (1974). Expanding upon the ideas set forth in *Vaughn*, our Supreme Court, in *Commonwealth v. Hines*, 496 Pa. 555, 437 A.2d 1180, 1182 (1981), stated:

> Because a guilty plea is not only an admission of conduct but also is an admission of all the elements of a formal criminal charge, and constitutes the waiver of constitutionally-guaranteed rights, the voluntariness of a guilty plea must be affirmatively established.
>
> . . .
>
> In order to satisfy the constitutional requirement that a valid guilty plea must stand as an "intelligent admission of guilt," the law of this Commonwealth has long required that before a judge may properly accept a plea of guilty, a colloquy with the defendant must dem-

onstrate that there is a factual basis for the plea and that the defendant understands the nature and elements of the offense charged.

Since it appears evident all players in the guilty plea process failed to make the legal distinction presented in this Dissenting Opinion, and since the factual predicate of the colloquy does not establish separate possession offenses per the above analysis, I believe Appellant's plea was not knowing. As such, Appellant should have been permitted to withdraw the plea and proceed to trial to test the Commonwealth's evidence if he so wished.[10] Since the Majority reaches the opposite conclusion, I dissent.

9. Although captioned as a Motion for New Trial, Appellant's motion sought to withdraw his guilty plea and should be viewed as a Motion to Withdraw Guilty Plea.

10. Alternatively, if the colloquy, viewed in abstraction, was deemed adequate, plea counsel could be deemed ineffective for allowing Appellant to plead guilty to two counts of posses-

sion where the factual predicate, viewed in context, did not establish the commission of two counts of possession. Such a conclusion would require a remand, at a minimum, to determine if there existed a reasonable basis for counsel's action. *See Commonwealth v. Proctor*, 369 Pa.Super. 224, 535 A.2d 131 (1987).