J. A26031/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
ANN MARIE LEONARD, : No. 350 MDA 2015
:
Appellant :

Appeal from the Judgment of Sentence, January 21, 2015,
in the Court of Common Pleas of Franklin County
Criminal Division at No. CP-28-CR-0000245-2014

BEFORE:  FORD ELLIOTT, P.J.E., WECHT AND PLATT,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:　　　**FILED NOVEMBER 19, 2015**

Ann Marie Leonard appeals from the judgment of sentence of January 21, 2015, following her conviction of one count of retail theft.[1]  We affirm.

The facts in this case are as follows:  on November 6, 2013, appellant and her friend, Margaret Alvarez ("Alvarez"), decided to go grocery shopping at Walmart in Chambersburg, Pennsylvania, in preparation for the upcoming holidays.  (Notes of testimony, 12/18/14 at 58.)  Upon arriving at Walmart, appellant and Alvarez decided to share a shopping cart, keeping their items separate so they could each pay for their own items.  (*Id.* at 61.)  After

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3929.

filling their initial cart, Alvarez went to get another cart while appellant remained in the store's grocery section. (*Id.* at 22-23, 62.) After reuniting, appellant and Alvarez separated again so that appellant could visit a friend working at the bank located within the store. (*Id.* at 62-63.) Appellant thought that she saw Alvarez leaving the store from the bank, and in what appellant testified was an effort to attempt to prevent Alvarez from leaving the store without her, appellant walked into the vestibule between the inside and outside doors of the store with the cart and was confronted by a Walmart asset protection associate, Cody Davis ("Davis"). (*Id.*) Davis allowed appellant to call Alvarez, who met them in the vestibule. (*Id.* at 50.) Upon Alvarez's arrival to the vestibule, Davis "told her what was going on." (*Id.* at 52.) Davis also testified that Alvarez told him that she believed that appellant intended to steal the items in the cart. (*Id.* at 84.) During the course of her conversation with Davis, Alvarez testified that she "probably did apologize" for the incident, but she did not recall making any statements as to appellant's intention to leave Walmart without paying for her items. (*Id.* at 76.)

The trial court has set forth the procedural history of this matter as follows:

> This case began with the filing of a *Criminal Police Complaint* by the Pennsylvania State Police on November 26, 2013 charging [appellant] with one count of Retail Theft graded as a misdemeanor of the first degree. [Appellant] appeared for her preliminary hearing with counsel on January 28,

2014; [appellant] waived her right to a preliminary hearing and was scheduled for mandatory arraignment in the Court of Common Pleas on March 12, 2014.

On March 7, 2014, the Commonwealth filed an Information charging [appellant] with one count of Retail Theft graded as a misdemeanor of the first degree. [Appellant] appeared for mandatory arraignment on March 12, 2014 and entered a plea of not guilty on the Information. After several continuances of the case, [appellant] appeared before the trial court for a pretrial conference on October 31, 2014. Trial was scheduled for December 18, 2014.

Trial convened as scheduled and [appellant] was convicted as charged. The trial court entered an order at the conclusion of trial directing the Franklin County Adult Probation Department to prepare a mini pre-sentence report and set sentencing for January 21, 2015 before [Hon. Jeremiah D. Zook.] [Appellant] appeared for sentencing as scheduled; the Court sentenced [appellant] to serve a period of probation of 60 months on various conditions. On February 2, 2015, [appellant] filed a timely *Post-Sentence Motion Pursuant to Pa.R.Crim.P. 720(B)*. [Appellant] challenged this Court's imposition of 60 months of probation and the condition of 400 hours of community service; [appellant] requested that the length of probation be shortened to 24 months and the community service hours be reduced to 250. On February 4, 2015, this Court denied [appellant's] motion without hearing.

On February 23, 2015, [appellant] filed her *Notice of Appeal* of this Court's judgment of sentence, dated January 21, 2015 denying [appellant's] motion. This Court issued an order on the same date directing [appellant] to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925. On March 16, 2015, [appellant] complied with this Court's February 23, 2015 directive.

Trial court opinion, 4/16/15 at 2-4.

Appellant has raised the following issues for this court's review challenging the admissibility of evidence at trial and the discretionary aspects of her sentence:

> I.    Whether the Trial Court abused its discretion when it allowed the Commonwealth to present evidence of a defense witness's prior inconsistent statement when, in fact, the defense witness's testimony at trial was not inconsistent with her previous statement?

> II.   Whether the Trial Court abused its discretion in denying Appellant's Post-Sentence Motion for Modification of Sentence after the Court sentenced Appellant to 60 months probation and to complete 400 community service hours?

Appellant's brief at 6.

The first issue for our review is whether the trial court abused its discretion when it permitted the Commonwealth to introduce extrinsic evidence of a defense witness' alleged prior inconsistent statement.

> In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. Questions concerning the admissibility of evidence are "within the sound discretion of the trial court . . . [and] we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion." **Commonwealth v. Brown**, 52 A.3d 1139, 1197 (Pa. 2012) (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will, or partiality, as shown by the evidence of record."

> ***Commonwealth v. Mendez***, 74 A.3d 256, 260 (Pa. Super. 2013), ***appeal denied***, 87 A.3d 319 (Pa. 2013). "If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error. ***Commonwealth v. Weakley***, 972 A.2d 1182, 1188 (Pa. Super. 2009), ***appeal denied***, 986 A.2d 150 (Pa. 2009).

***Commonwealth v. Belknap***, 105 A.3d 7, 9-10 (Pa. Super. 2014).

The Pennsylvania Rules of Evidence allow the introduction of a witness' prior inconsistent statement for the purposes of impeaching the witness. Pa.R.E. 613(a). Extrinsic evidence for the purposes of impeachment may be introduced under the following three conditions: (1) the contents of the statement are disclosed to the witness; (2) the witness is given an opportunity to explain or deny the making of the statement; and (3) an adverse party is given an opportunity to question the witness. Pa.R.E. 613(b); ***Commonwealth v. Charleston***, 16 A.3d 505, 527 (Pa.Super. 2011). In order to impeach a witness' credibility, the impeaching party must establish that the witness actually made the inconsistent statement. ***Commonwealth v. Woods***, 710 A.2d 626, 630 (Pa.Super. 1998). This court further stated that "a summary of the [witness'] statement cannot be used for impeachment purposes absent adoption of the statement by the witness as his/her own." ***Id.***

We find that ***Charleston*** is most analogous to the facts of the instant appeal and therefore controls here. In ***Charleston***, the Commonwealth attempted to obtain testimony from Nashua Sanders ("Sanders"), a friend of

both the defendant and the victim, and Clara Stanton ("Stanton"), the victim's mother, regarding a conversation in which Sanders allegedly told Stanton that "[the defendant] had told Sanders, one week before the murder, of his intent to rob the victim." *Charleston*, 16 A.3d at 509, 526. At trial, Sanders denied that such a conversation ever took place. *Id.* at 526. For the purposes of impeaching Sanders, the Commonwealth called Stanton to testify about the alleged conversation that she had with Sanders. *Id.* at 527. This court held that the trial court did not abuse its discretion when the trial court permitted Stanton to testify regarding her conversation with Sanders, stating that Stanton's testimony is considered extrinsic evidence of a prior inconsistent statement as is permitted by Rule 613(b). *Id.*

In the instant case, the Commonwealth complied with all three requirements under Rule 613(b). First, the Commonwealth confronted Alvarez by asking her if she recalled having a conversation with Davis regarding appellant's intent to steal the items in question.[2]

---

[2] Davis's account of his conversation with Alvarez, to which he testified on rebuttal, is as follows:

> She [Alvarez] said I'm sorry, I can't believe this happened in that manner, and I [Davis] just simply asked her I said, well, do you believe she did it or no, and she goes, well, yeah, I do. She's been through a lot and I'm still in shock but yeah, I do.

Notes of testimony, 12/18/14 at 84.

Pa.R.E. 613(b)(1); notes of testimony, 12/18/14 at 76. Second, the Commonwealth, during its cross-examination of Alvarez, provided Alvarez with the opportunity to deny or explain her statements. Pa.R.E. 613(b)(2); notes of testimony, 12/18/14 at 76. Specifically, during cross-examination, Alvarez indicated that she could not recall making such a statement to Davis, and that she did not think that she could have made that statement:

> Q: Do you recall you said you believe that you probably apologized, it sounds like something you would do, correct?
>
> A: Yes.
>
> Q: I asked you do you recall telling Mr. Davis that you believe Ms. Leonard stole those items?
>
> A: I can't recall, sir.
>
> Q: You don't recall saying that or you don't recall that you—you don't recall it at all?
>
> A: I don't recall it all, I'm sorry.
>
> Q: Do you believe you could have made that statement?
>
> A: I don't know. I don't think so
>
> Q: You don't think so?
>
> A: No.

*Id.* Finally, the adverse party had an opportunity to question the witness when defense counsel re-examined Alvarez on re-direct. Pa.R.E. 613(b)(3); notes of testimony, 12/18/14 at 76-77. During re-direct, Alvarez reiterated that while she "probably did apologize" to Walmart asset protection

associates for the incident, she did not have any memory of making any statements relating to whether or not appellant intended to steal the items in question. (Notes of testimony, 12/18/14 at 76.)

Therefore, we find that the trial court did not abuse its discretion by permitting the Commonwealth to introduce extrinsic evidence regarding Alvarez's prior inconsistent statements, and that the Commonwealth complied with all three elements of Rule 613(b).

The second issue before this court is whether the trial court abused its discretion in regards to discretionary aspects of appellant's sentence.

> A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. *Commonwealth v. Hunter*, 768 A.2d 1136 (Pa. Super. 2001)[,] *appeal denied*, 796 A.2d 979 (Pa. 2001). When challenging the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 812 A.2d 617 (Pa. 2002); *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa. 1987); 42 Pa. C.S.A. § 9781(b); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal 'furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases.'" *Commonwealth v. Williams*, 562 A.2d 1385, 1387 (Pa. Super. 1987) (*en banc*) (emphasis in original).

*Commonwealth v. McNear*, 852 A.2d 401, 407-408 (Pa. Super. 2004).

Appellant failed to include a Rule 2119(f) statement in her brief, and the Commonwealth has likewise failed to object to the lack of a Rule 2119(f) statement. Since the requirement of such a statement is procedural and not jurisdictional, "the Commonwealth's failure to object or otherwise assert the defect in the form of Appellant's brief has resulted in a waiver of defect." *Commonwealth v. Titus*, 816 A.2d 251, 255 (Pa.Super. 2003) (citations omitted); *see also Commonwealth v. Brougher*, 978 A.2d 373, 375 (Pa.Super. 2009) (failure of the appellant to comply with Rule 2119(f), where the Commonwealth does not object to statement's absence, does not compel waiver). Therefore, we must determine whether there is a substantial question requiring us to review the discretionary aspects of the sentence imposed by the trial court. Whether an issue raises a substantial question is a determination made on a case-by-case basis. *Commonwealth v. McAfee*, 849, A.2d 270, 274 (Pa.Super. 2004) (citation omitted).

A substantial question is raised when an appellant "advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa.Super. 2011) (citation omitted).

In the instant appeal, appellant is unable to meet either of the requirements for a substantial question. First, as appellant concedes in her brief, the sentencing judge's actions were not inconsistent with a specific provision of the Sentencing Code. A sentencing judge is permitted to impose a sentence of probation for a maximum length equivalent to the maximum length in which a defendant may be incarcerated.[3] 42 Pa.C.S.A. § 9754(a). Specifically, appellant states that she was sentenced by the sentencing court to the "maximum term of probation *permissible*." (Appellant's brief at 22 (emphasis added).) While the sentencing court did set appellant's probation for the statutory maximum of 60 months, it did so within the sentencing guidelines, which suggest a penalty ranging from restorative sanctions to one month of confinement.

Second, appellant has failed to demonstrate how her sentence is "contrary to the fundamental norms which underlie the sentencing process," as contemplated by this court in **Prisk**. Here, the sentencing court sentenced appellant to 60 months' probation, 400 hours of community service, and restitution. (Sentencing order, 1/21/15.) The sentencing court also added a provision that gave appellant the opportunity to have her supervision terminated if she complied with all other terms of her probation

---

[3] Appellant was convicted of a first-degree misdemeanor, which carries a statutory maximum sentence of five years' imprisonment. 18 Pa.C.S.A. § 1104(1).

after 36 months,[4] and had all costs and restitution paid in full. (*Id.*) By imposing such a sentence, the sentencing court acted fully within its discretion under the sentencing guidelines and therefore imposed a sentence that was in full compliance with the fundamental norms that underlie the sentencing process.

Therefore, we find that appellant has failed to raise a substantial question as to the discretionary aspects of the sentencing court's January 21, 2015 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2015

---

[4] As noted by the trial court, in order for appellant to qualify to have her supervision terminated after 36 months, appellant would be required to perform approximately 11 hours per month of community service. (Trial court opinion, 4/16/15 at 13.)

- 11 -