J. S62038/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| WAYNE NELSON, | : | No. 1085 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, March 13, 2018,
in the Court of Common Pleas of Delaware County
Criminal Division at No. CP-23-CR-0002270-2017

BEFORE: LAZARUS, J., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JANUARY 15, 2019**

Wayne Nelson appeals from the March 13, 2018 judgment of sentence entered by the Court of Common Pleas of Delaware County following his conviction of simple assault and possession of an instrument of crime.[1] After careful review, we affirm.

The trial court provided the following factual and procedural history:

On March 16, 2017 at a little after 8:00 a.m. Chris Grandison was driving his daughter to Harris School. As he turned left off of Clifton Avenue onto Blackstone Avenue there were several cars stopped in front of him traveling in both directions. The traffic jam was caused by snow constricting the road to one lane of travel. Mr. Grandison looked behind him and realized that he could not back onto Clifton Avenue because there were cars stopped behind him. He could not pull forward either. Mr. Grandison attempted to direct traffic to help

---

[1] 18 Pa.C.S.A. §§ 2701(a) and 907(a), respectively.

people move out of the situation. [Appellant's] car, a white Infiniti, was two car lengths in front of him facing the opposite direction in the same lane of travel. [Appellant] and the witness exchanged some words. Since the street had become a parking lot, Mr. Grandison exited his vehicle and walked his daughter to the school a half block away.

As Mr. Grandison walked his daughter to school they walked by [appellant's] vehicle. Mr. Grandison testified that as he walked by the car [appellant] began yelling at him. Mr. Grandison stated that [appellant] told him he was going to "kill him." Mr. Grandison continued to the school but saw [appellant] get out of his car, take something out of the trunk and get back into his car. As Mr. Grandison returned to his car he had a premonition there might be trouble so he turned on his cell phone video camera. As Mr. Grandison passed by [appellant's] car, [appellant] exited the car and hit him from behind with a tire iron in the head. [Mr.] Grandison and [appellant] then struggled, as the witness stated "for my life[."] As they struggled, Mr. Grandison's legally licensed handgun went flying from his waistband and was recovered by a bystander. Mr. Grandison believes the two fought for several minutes. Bystanders called the police. Upon hearing the sirens, [appellant] fled on foot toward Harris School.

Morris Holcombe, a bystander, testified he was sitting in a line of traffic. He observed [Mr.] Grandison walk by his vehicle with his daughter heading towards Harris School. He stated that [Mr.] Grandison was saying loudly on his way back to his vehicle that [appellant] stated he was going to kill him. He stated that when [Mr.] Grandison got to [appellant's] vehicle, [appellant] exited his vehicle and attacked him. He stated the two males began physically fighting and he saw someone throw a handgun into a snowbank. Mr. Holcombe testified he went and picked up the gun, locked himself in his car and called 911.

Rachel Houseman, another bystander, testified she pulled over on Blackstone Avenue to let cars get down the street towards Harris School. She stated that [appellant's] white Infiniti attempted to go around her blocking [Mr.] Grandison's Toyota from getting by. [Mr.] Grandison then put his hazard[] lights on and got out and walked his daughter to school leaving his vehicle in the middle of the street blocking everyone in. When [Mr.] Grandison was walking back to his car, [appellant] jumped out of his car and attacked him. She testified the two men began fighting and she heard someone say he has a gun. She was unable to see who had the gun. Ms. Houseman stated she stayed in her car at that point and was unable to see anything else.

[Appellant] testified. He admitted exchanging words with [Mr.] Grandison but insisted [Mr.] Grandison got hot first. [Appellant] denied ever threatening him. [Appellant] saw [Mr.] Grandison make a hand motion towards his waist and adjust something. [Appellant] believed [Mr.] Grandison was indicating to him [that] he was armed. As [Mr.] Grandison walked past his car door [appellant] testified [Mr.] Grandison told him he'll be right back. [Appellant] took that comment as a threat that [Mr.] Grandison intended to harm him when he returned. [Appellant] admitted he retrieved a tire iron from his trunk but said he did so because he feared for his life. [Appellant] testified as [Mr.] Grandison got to the back of his car he saw [Mr.] Grandison coming toward him with his hand on his hips. He stated [that he] was in fear for his life so he got out [of] the car and hit [Mr.] Grandison with the tire iron. [Appellant] then grabbed [Mr.] Grandison's gun and tossed it into a snowbank. [Appellant] stated he left the scene because he was in fear for his life.

After a jury trial commencing on January 30, 2018, the [j]ury acquitted [appellant] [of] two counts of [a]ggravated [a]ssault and one count of [t]erroristic [t]hreats and found [appellant] guilty of one count of [s]imple [a]ssault[] and [p]ossession of

> [i]nstruments of [c]rime.[2]  After sentencing, [appellant] filed a timely [n]otice of [a]ppeal and a timely [Pa.R.A.P. 1925(b) s]tatement of [errors] [c]omplained of on [a]ppeal.

Trial court opinion, 5/17/18 at 1-4 (footnotes omitted).  The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on May 17, 2018.

Appellant raises the following issues for our review:

> 1. Did the learned trial court err when [it] prohibited trial counsel from attempting to impeach Commonwealth witness, Morris Holcombe[,] with a statement inconsistent with his trial testimony?  The statement was given by him to defense investigator, Donald Fredericks[,] who wrote a report about the information provided by Mr. Holcombe.  Investigator Fredericks was not permitted to testify about the prior inconsistent statement nor was counsel permitted to ask [Mr.] Holcombe questions about the statement[.]
>
> 2. Did the learned trial court err in its jury instruction on the issue of justification?  Trial counsel requested the court to instruct the jury on the issue of justification as described 18 Pa. C.S.[A.] 505(b)(2.3) and the learned trial court denied the request for this instruction and erroneously instructed the jury that the appellant had a duty to retreat.

Appellant's brief at 4.

In his first issue on appeal, appellant avers that the trial court erred when it did not permit appellant's counsel to confront Morris Holcombe, a

---

[2] The trial court sentenced appellant to 11-23 months' incarceration followed by three years' probation.

Commonwealth witness, with evidence of an inconsistent statement made to appellant's private investigator, Donald Fredericks. (Appellant's brief at 12-13.) Appellant further avers that the trial court erred when it did not permit Fredericks to testify regarding statements made by Holcombe. (*Id.* at 13.)

When reviewing a trial court's refusal to admit evidence, we are held to the following standard:

> Appellate courts typically examine a trial court's decision concerning the admissibility of evidence for abuse of discretion. *See Commonwealth v. Dengler*, [] 890 A.2d 372, 379 ([Pa.] 2005). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Grady v. Frito-Lay, Inc.*, [] 839 A.2d 1038, 1046 ([Pa.] 2003).

*Commonwealth v. Dillon*, 925 A.2d 131, 136 (Pa. 2007).

Pennsylvania Rule of Evidence 613 governs the use of prior inconsistent statements for the purposes of impeaching a witness. Rule 613 provides, in relevant part:

> **(a)** **Witness's Prior Inconsistent Statement to Impeach.** A witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness's credibility. The statement need not be shown or its contents disclosed to the witness at that time, but on request, the statement or contents must be shown or disclosed to an adverse party's attorney.

> **(b) Extrinsic Evidence of a Witness's Prior Inconsistent Statement.** Unless the interests of justice otherwise require, extrinsic evidence of a witness's prior inconsistent statement is admissible only if, during the examination of the witness,
>
> > (1) the statement, if written, is shown to, or if not written, its contents are disclosed to, the witness;
> >
> > (2) the witness is given an opportunity to explain or deny the making of the statement; and
> >
> > (3) an adverse party is given an opportunity to question the witness.

Pa.R.E. 613(a)-(b).

The use of prior inconsistent statements for the purpose of impeaching a witness, however, is not without limitation. Indeed, this court has previously held that,

> ". . . it must be established that the witness, in fact, made the allegedly inconsistent statement." *Commonwealth v. Woods*, 710 A.2d 626, 630 (Pa.Super. 1998), *appeal denied*, [] 729 A.2d 1129 ([Pa.] 1998). "[A] summary of a witness' statement cannot be used for impeachment purposes absent adoption of the statement by the witness as his/her own." *Id.* The rationale for this rule is: "[I]t would be unfair to allow a witness to be impeached on a police officer's interpretation of what was said rather than the witness' verbatim words." *Commonwealth v. Simmons*, [] 662 A.2d 621, 638 ([Pa.] 1995).

*McManamon v. Washko*, 906 A.2d 1259, 1268 (Pa.Super. 2006), *appeal denied*, 921 A.2d 497 (Pa. 2007). In order for a statement to have been

adopted by a witness, the statement must be either given under oath at a formal legal proceeding, put in a writing signed and adopted by the witness, or the statement may be a contemporaneous verbatim recording of a witness's statements. *Commonwealth v. Brown*, 52 A.3d 1139, 1154 n.15 (Pa. 2012), citing *Commonwealth v. Lively*, 610 A.2d 7, 10 (Pa. 1992). Our supreme court has further held that a contemporaneous verbatim recording must be "electronic, audiotaped or videotaped . . . in order to be considered as substantive evidence." *Commonwealth v. Wilson*, 707 A.2d 1114, 1118 (Pa. 1998).

Here, a review of the record reveals that appellant's counsel sought to impeach Holcombe's credibility by confronting him with Fredericks's investigator's report consisting of Fredericks's notes. (Notes of testimony, 1/31/18 at 155.) There is no evidence of record that Holcombe gave his statement under oath or put any statement in writing. Additionally, there is no evidence of record that Fredericks made a contemporaneous verbatim recording of Holcombe's statement as defined by our supreme court. (*Id.*)

Accordingly, we find that the trial court did not abuse its discretion when it refused to permit appellant's counsel to attempt to impeach Holcombe's credibility by confronting him with Fredericks's report. Therefore, appellant's first issue is without merit.

In his second issue, appellant contends that the trial court erred when it denied appellant's request that the jury be provided with an instruction pertaining to justification.  (Appellant's brief at 28-29.)

> In deciding whether a trial court erred in refusing to give a jury instruction, we must determine whether the court abused its discretion or committed an error of law.  ***Von der Heide v. Commonwealth, Dep't of Transp.***, [] 718 A.2d 286, 288 ([Pa.] 1998).  Where a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record.  ***Commonwealth v. Lightfoot***, [] 648 A.2d 761, 764 ([Pa.] 1994).  When there is evidence to support the defense, it is "for the trier of fact to pass upon that evidence and improper for the trial judge to exclude such consideration by refusing the charge."  ***Id.***  (internal quote and citations omitted).

***Commonwealth v. DeMarco***, 809 A.2d 256, 260-261 (Pa. 2002).

> In order, then, to be entitled to an instruction on justification as a defense to a crime charged, the actor must first offer evidence that will show:
>
> (1)  that the actor was faced with a clear and imminent harm, not one which is debatable or speculative;
>
> (2)  that the actor could reasonably expect that the actor's actions would be effective in avoiding this greater harm;
>
> (3)  that there is no legal alternative which will be effective in abating the harm; and

(4) that the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.

As with any offer of proof, it is essential that the offer meet a minimum standard as to each element of the defense so that if a jury finds it to be true, it would support the affirmative defense—here that of necessity. This threshold requirement is fashioned to conserve the resources required in conducting jury trials by limiting evidence in a trial to that directed at the elements of the crime or at affirmative defenses raised by the defendant. Where the proffered evidence supporting one element of the defense is insufficient to sustain the defense, even if believed, the trial court has the right to deny use of the defense and not burden the jury with testimony supporting other elements of the defense.

[**Commonwealth v. Capitolo**, 498 A.2d [806,] 809 [(Pa. 1985).] It is the defendant's burden to proffer sufficient evidence for each of the **Capitolo** factors. **See Commonwealth v. Manera**, 827 A.2d 482, 485 n. 7 (Pa.Super. 2003) ("Of course, the fact that a defense is theoretically available for a given crime does not mean that the Commonwealth must disprove justification in every case. Because justification is an affirmative defense, the defendant has the burden of asserting an appropriate offer of proof in order to be entitled to a jury instruction on justification.").

**Commonwealth v. Clouser**, 998 A.2d 656, 659 (Pa.Super. 2010), **appeal denied**, 26 A.3d 1100 (Pa. 2011).

We agree with the trial court's conclusion that appellant failed to offer evidence showing that he was faced with clear and imminent harm that was not subject to debate or speculation. Specifically, the trial court reached the following conclusion:

> Grandison had passed by [appellant's] car door when [appellant] exited his vehicle and hit Grandison on the head from behind with a tire iron. . . . [Appellant] could have remained in his car and very probably no altercation would have occurred. For the same reason, [appellant] also fails the "no alternative" prong of the test. He could have remained in his car and avoided any possible harm to himself. The same evidence also demonstrates [appellant] could not reasonably expect that his actions would be effective in avoiding . . . greater harm. Therefore, [appellant] failed to show he was entitled to a jury instruction on justification based on the evidence at trial.

Trial court opinion, 5/17/18 at 11-12. We find that the trial court's conclusion is based on the evidence of record. Accordingly, the trial court did not abuse its discretion, nor did it commit an error of law, when it denied appellant's request for a jury instruction on justification.

Judgment of sentence affirmed.


Lazarus, J. joins this Memorandum.

McLaughlin, J. concurs in the result.

J. S62038/18

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/15/19