# Commonwealth v. Dabney

C.P. of Montgomery County, No. 4242-2006.

*Christopher Maloney,* for Commonwealth.
*Brian Zeiger,* for defendant.

HODGSON, *P.J.,* August 15, 2011—The appellant, McKay Dwayne Dabney, appeals from our final order of dismissal entered on July 11, 2011.

The court's memorandum opinion dated July 11, 2011 sets forth the reasons for the court's decision; therefore, we need not issue another full opinion in accordance with Rule of Appellate Procedure 1925(a).[1]

In view of the foregoing, the final order of dismissal of this court dated July 11, 2011 should be affirmed.

---

1. A copy of the court's July 11, 2011 opinion is attached hereto.

## FACTS AND PROCEDURAL HISTORY

The instant case arises from a series of events that occurred on May 28, 2007. On that date, at approximately 4:02 a.m., a call was received by the Cheltenham Township Police Department reporting a rape. Upon arriving at the scene, police officers found a 26-year-old female lying on the floor of a neighboring residence. The female victim stated that she had been raped by a man whom she knew as "Ears," at an apartment located at 7876 Spring Avenue. While outside securing the scene, Office Brian Hopkins and Officer John Barr of the Cheltenham Township Police Department, observed the petitioner, McKay Dwayne Dabney ("petitioner"), exit an apartment building located at 7876 Spring Avenue and walk in their direction.

Upon approaching the officers, petitioner stated that he was looking for his female friend who had been sleeping at his apartment. Before the officers responded, the petitioner stated, "That shit was consensual." (N.T., February 26, 2008 at p. 62). He was alarmed because not only was the young woman missing, but there was also fresh blood on his sheets. The name of petitioner's missing friend closely matched the name of the victim, who ultimately identified petitioner as the man who raped her. Petitioner was arrested on the scene and taken to the Cheltenham Township Police Department. While in transit to the station, petitioner admitted to having sex with the victim. He further disclosed to the officers that the blood on his sheets belonged to the victim who was a virgin.

Petitioner remained in a cell at the Cheltenham Township Police Station until 11:30 a.m. at which time he was brought out and asked to sign a Constitutional Rights Form, which

he did. Thereafter, he gave a five page statement which also included a written version of his Miranda rights. After a thorough investigation, petitioner was ultimately charged with Rape, Aggravated Indecent Assault-Lack of Consent and Aggravated Indecent Assault-Forcible Compulsion.

On October 22, 2007, petitioner brought a motion to suppress his statement. On November 2, 2007, this court denied petitioner's motion, finding that his statement had been knowingly, intelligently and voluntarily made, as it was neither a product of coercion nor inducement. Furthermore, this court found that the statement was not the product of an illegal delay between arrest and arraignment since the police were in the process of appropriate investigative procedures prior to the taking of the statement, the performance of which did not cause any undue delay. See *Commonwealth v. Perez*, 577 Pa. 360, 845 A.2d 779 (2004).

A four day jury trial commenced on February 26, 2008. On February 29, 2008, the jury returned a guilty verdict on the charge of Aggravated Indecent Assault-Lack of Consent. Thereafter, on March 26, 2008, petitioner filed a Motion for Extraordinary Relief in the form of a New Trial, which this court subsequently denied on March 28, 2008. Sentencing commenced on August 25, 2008, at which point, petitioner was sentenced to undergo a term of imprisonment of ten to 23 months. The court further sentenced the petitioner to three years' probation consecutive to the expiration of parole. On September 12, 2008, petitioner appealed to the Pennsylvania Superior Court from the judgment of sentence and filed a concise statement of matters complained of with this court on

September 24, 2008 in accordance with Rule 1925 (b) of the Pennsylvania Rules of Appellate Procedure. On September 9, 2009, the Superior Court affirmed this court's judgment on sentence. Thereafter, the Pennsylvania Supreme Court denied the petitioner's petition for allowance of appeal on December 29, 2009. Petition filed a PCRA Petition on March 28, 2011. Pursuant to the court's March 29, 2011 order, the court scheduled an evidentiary hearing for June 29, 2011. On June 7, 2011, the Commonwealth filed its answer to petitioner's PCRA petitioner. The PCRA evidentiary hearing took place before the undersigned on June 28, 2011.

After careful review of both parties' legal memoranda and an evidentiary hearing, we find petitioner's PCRA Petition meritless. Accordingly, we dismiss.

## LEGAL DISCUSSION

Appellant raises eight issues of ineffective assistance of counsel.

It is well-established that counsel is presumed effective and the defendant bears the burden of proving ineffectiveness. *Commonwealth v. Cooper*, 596 Pa. 119, 941 A.2d 655, 664 (2007). To overcome this presumption, appellant must satisfy a three-pronged test and demonstrate that: (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. *Commonwealth v. Ligons*, 601 Pa. 103, 971 A.2d 1125 (2009) citing *Commonwealth v. Pierce,* 567 Pa. 186, 203, 786 A.2d 203,

213 (2001). Prejudice in the context of an ineffectiveness claim means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceedings would have been different. *Commonwealth v. Fletcher*, 604 Pa. 493, 986 A.2d 759 (2009). A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs. *Pierce*, supra at 221-222. In the case before this court, petitioner has failed to meet this burden.

In his PCRA petition, petitioner raises the following claims:

(1) Trial counsel was ineffective for failing to file a timely written motion to pierce the Rape Shield Law pursuant to 18 Pa.C.S.A. Section 3104.

(2) Trial counsel was ineffective because he did not argue that the door had been opened to impeachment evidence after the victim testified that they were just friends.

(3) Trial counsel was ineffective because he did not confront the victim with her prior inconsistent statement or other impeachment evidence.

(4) Trial counsel was ineffective because he failed to call key witnesses to corroborate the petitioner's position.

(5) Trial counsel was ineffective for failing to call any character witnesses on behalf of the petitioner.

(6) Trial counsel was ineffective for declining to pursue a motion to suppress petitioner's alleged oral

statement to police officers.

(7) Trial counsel was ineffective for failing to object to Sergeant Schaffer's identification of the substance on the victim's pants as "consistent with blood."

(8) Trial counsel was ineffective because he failed to make a hearsay objection to Officer Floirendo reading aloud portions of a police report during witness testimony.

First, petitioner argues that trial counsel was ineffective for failing to file a timely written motion to pierce the rape shield law and introduce evidence of an alleged sexual encounter with the victim that occurred two years prior to petitioner's assault on the victim. We disagree. Trial counsel was not ineffective for failing to file a timely motion because the petitioner did not suffer any prejudice as a result of counsel's mistake and the claim lacks any arguable merit. The petitioner did not suffer any prejudice for two reasons. First, the admission of such evidence would have been improper under the Pennsylvania Rules of Evidence. Generally, Pennsylvania's Rape Shield Law precludes the admission of evidence of a victim's past sexual conduct in the prosecution of sex offenses. The purpose of the Rape Shield Statute is "to prevent a trial from shifting its focus away from the culpability of the accused towards the virtue and chastity of the victim." *Commonwealth v. Guy*, 686 A.2d 397, 400 (Pa. Super. 1996). Relevant evidence is limited to that which may tend to directly "exculpate the accused by showing, inter alia, bias, hostility, motive to lie or fabricate, evidence of a sexual encounter with another person on the date in question, or impeachment by use of a prior inconsistent

statement." *Id.*

In accordance with Pennsylvania Rule of Evidence 403, relevant evidence intended to exculpate the accused may still be excluded where its probative value is outweighed by the danger of unfair prejudice. Specifically, unfair prejudice exists when evidence of past sexual conduct is sought to be used to bolster a consent defense and prove that a victim acted in conformity with past behavior on the date in question. See *Guy*, 686 A.2d at 401. In *Guy*, the defendant attempted to use evidence that the victim had a past history of soliciting men to have intercourse with her in exchange for drugs. *Id.* at 400. This past sexual history would support the defendant's defense that he had consensual sex with the victim in exchange for crack cocaine. *Id.* The Superior Court in *Guy* determined that such use of the evidence was prohibited under the Rape Shield Law. *Id.* According to the court, the evidence would unfairly prejudice and humiliate the victim by taking the focal point of the trial away from a determination of the events of the night in question to a determination of whether the victim had acted in conformity with past indiscretions. *Id.*

Here, like the defendant in *Guy*, the petitioner is attempting to use past sexual conduct of the victim to demonstrate that on the night in question the sex was consensual. As the petitioner's counsel states in his supporting memorandum of Law, "If attorney English had filed a timely motion, he could have asked about their sexual history and Mr. Dabney could have testified to details corroborating his assertion that the contact in May 2006 was consensual." Attorney English confirmed

during testimony at the evidentiary hearing that the purpose of such evidence was to support the defense that the petitioner and victim engaged in consensual sex on the night in question. (N.T., June 28, 2011 at p. 17). Thus, just as the court stated in *Guy*, this use of a victim's past sexual conduct is improper under the Rape Shield Statute and inadmissible. Additionally, this use of a past, singular sexual encounter to prove consent is prohibited by rule 404(b)(1) of the Pennsylvania Rules of Evidence, which prohibits use of a prior act to prove action in conformity therewith.

In any event, as the Superior Court noted in its September 9, 2009 opinion, the petitioner was still able to testify during the trial about his past sexual history with the victim. (N.T., February 28, 2008 at p. 96). Although trial counsel failed to file a timely written motion, the jury still heard petitioner's statement to police that the victim and he had engaged in oral sex on at least ten prior occasions. Given the Commonwealth's failure to object to such testimony, the jury was able to take the evidence into consideration in reaching its verdict. Despite considering the testimony, the jury still rendered a verdict of guilty. Consequently, the petitioner suffered no prejudice.

Furthermore this defense lacks any arguable merit as the petitioner failed to present any evidence at the evidentiary hearing to substantiate the claim that he had a prior sexual encounter with the victim. The only testimony that the petitioner presented at the evidentiary hearing was the testimony of trial counsel. However, trial counsel did not have any personal knowledge of what previously occurred between the petitioner and the victim. The petitioner had the

opportunity at the hearing to testify and present evidence of a prior sexual relationship between the petitioner and the victim but elected not to make use of this opportunity. Consequently, the Commonwealth was unable to inquire on cross-examination as to the relevance or admissibility of such evidence. The petitioner did not fulfill his burden of proving that this claim of ineffectiveness of counsel had any arguable merit. As such, this claim of ineffectiveness of counsel fails.

Concerning issues two and three, the court will address these issues together in the interests of clarity and judicial economy as the two issues raise similar claims. In issue two, the petitioner argues that trial counsel was ineffective because he did not argue that the door had been opened to impeachment evidence after the victim testified that they were just friends. In issue three, petitioner asserts trial counsel was ineffective because he did not confront the victim with her prior inconsistent statement or other impeachment evidence. Based on the petitioner's testimony and the lack of an inconsistent statement by the victim, we find that both issues are without merit. In addition, trial counsel had a reasonable basis for not using the impeachment evidence against the victim. The petitioner maintains that the victim's testimony could have been impeached by the use of a follow-up interview with police officers in which the victim stated that she and the petitioner may have kissed previously and engaged in oral sex. This claim fails as the alleged statements to police were never adopted by the victim.

It is well-settled that witnesses cannot be impeached with a prior inconsistent statement that is attributed to

them by a third person and has not been adopted by the witness. See *Commonwealth v. Woods*, 710 A.2d 626, 630 (Pa. Super. 1998) (a summary of a witness's statement cannot be used for impeachment purposes absent adoption of the statement by the witness as his or her own); *Commonwealth v. Lively*, 610 A.2d 7, 10 (Pa. Super. 1992) (prior inconsistent statements can only be used as substantive evidence when they have been adopted by the witness, or have been given under oath at a formal legal proceeding, or they are contemporaneous, verbatim recordings of the statements). In *Woods*, the appellant claimed that the trial court erred in failing to give a prior inconsistent statement charge to the jury. *Id.* at 629. The appellant introduced the issue of an inconsistent statement by a witness through officer testimony and an investigation form, which contained a summarization of the witness's prior conflicting statement. *Id.* at 630. According to the court in *Woods*, the statement could not be used to impeach the witness' credibility because the appellant did not first establish that the witness had in fact made the prior statement. *Id.* The witness did not admit to making the prior statement, and the appellant failed to produce the officer to whom the witness allegedly made the statement. *Id.* Instead, the appellant in *Woods* attempted to introduce the inconsistent statement through the presentation of an investigative report that summarized that statement. *Id.* This method was not sufficient to establish that the witness made the prior statement. Given the witness's failure to adopt the conflicting statement, the statement could not be used for impeachment purposes. *Id.*

Here, like the appellant in *Woods*, the petitioner seeks to impeach a witness with an alleged prior inconsistent

statement that was never adopted by the witness. Further, like appellant's use of an investigative form in *Woods*, the petitioner seeks to impeach the victim through the use of a summary of the statement in a police report that was never adopted by the victim. As the Superior Court stated in its September 9, 2009 opinion, the "victim's prior inconsistent statement, allegedly contained in a police report, meets none of the *Lively* requirements for admission." See attached hereto. Thus, as was the case in *Woods*, trial counsel could not have impeached the victim through the use of the alleged prior inconsistent statement. What is more, the petitioner corroborated the victim's characterization of the relationship by testifying that he did not consider the petitioner and victim to be in a romantic relationship. (N.T., February 28-29, 2008 at p. 18-19).

In addition to the lack of any arguable merit to issues two and three, trial counsel had a reasonable basis for not attempting to impeach the victim with her alleged prior statements to the police. The prior statements related to a prior sexual encounter between the victim and the petitioner. These statements constituted rape shield testimony that the trial court had prohibited prior to trial counsel's cross-examination of the victim. In fact, the trial court had previously denied trial counsel's two oral motions and written motion to admit the rape shield testimony. Thus, trial counsel decided not to attempt to use such evidence and risk being denied by the court for a fourth time in front of the jury. According to trial counsel's testimony at the evidentiary hearing, a failed fourth attempt at using such evidence would result in a negative reaction by the jury, who would begin to question

the credibility of trial counsel's argument. (N.T., June 28, 2011 at p. 19-20) Thus, counsel made a rational, strategic decision not to attempt to use the impeachment evidence. Accordingly, trial counsel was not ineffective for declining to impeach the victim. Issues two and three fail as they are both without merit.

Concerning issue four, trial counsel was not ineffective for declining to call key witnesses to corroborate petitioner's position as there was no reasonable probability that their testimony would have changed the outcome of the proceedings. To establish ineffectiveness for failing to call witnesses, the defendant must establish that: (1) the witnesses were available; (2) counsel knew or should have known of their existence; (3) the witnesses were prepared to testify for the defense; and (4) the testimony was necessary to avoid prejudice. *Commonwealth v. Fink*, 791 A.2d 1235, 1249 (Pa. Super. 2002), citing *Commonwealth v. Priovolos*, 552 Pa. 364, 368, 715 A.2d 420, 422 (1998). The petitioner contends that trial counsel was ineffective for failing to call David Williams or Larry McCloud.

According to the petitioner, David Williams would have testified that "no struggle or screaming was heard on the night in question by any of the neighbors." However, Mr. Williams' testimony as to what other neighbors may or may not have heard is pure speculation and inadmissible hearsay; thus, it would not have been admitted into evidence. The petitioner asserts that Mr. Williams recorded the neighbors' statements in the regular course of business; thus, the recordings would have overcome any hearsay objections. We find this argument unpersuasive. Pursuant to Pennsylvania Rule of Evidence 803(6), reports and

memoranda are admissible if they are kept in the course of a regularly conducted business activity and it was the regular practice of that business activity to conduct such a report. Regardless of what Mr. Williams may have testified to, the court finds it unreasonable to believe that Mr. Williams, as a building manager, regularly took on the role of police or criminal investigator whenever a crime occurred on the property. The interview of potential witnesses falls within the duties of a police officer and not a building manager. As such, we find that Mr. Williams' recordings would have been inadmissible hearsay. Mr. Williams would not have been able to testify on the petitioner's behalf. Thus, trial counsel was not ineffective for failing to call Mr. Williams as a witness.

Additionally, petitioner asserts that trial counsel was ineffective for his failure to call Larry McCloud to testify at trial. This witness told investigators that prior to the night in question he had previously seen the petitioner leaving the victim's house in the early hours of the morning. According to the petitioner, Mr. McCloud's testimony was vital to corroborating the type of prior relationship that the victim and petitioner had. The testimony that a neighbor may have seen the petitioner leaving the victim's house late on some prior, unidentified night is irrelevant as to what happened on the night of May 28, 2007. At best, the evidence is speculative.

Assuming arguendo that the evidence was relevant, the petitioner was not prejudiced by the absence of this testimony. The victim had previously testified that the petitioner and victim were friends and that the petitioner had been to her home prior to the assault. (N.T., February

27, 2008 at p. 58). Furthermore, the petitioner also testified that he had previously been to the victim's residence. (N.T., February 27, 2008 at p. 228). Consequently, the testimony from Mr. McCloud would have merely been cumulative of prior testimony and would not have changed the outcome of the proceedings. Thus, trial counsel was not ineffective for failing to call Mr. McCloud to testify.

In regard to issue five, the petitioner withdrew this challenge at the evidentiary hearing. (N.T., June 28, 2011 at p. 3-4). Thus, no further discussion is warranted.

Addressing issue six, trial counsel made a logical decision to not pursue suppressing a statement that did not harm the petitioner's case. The petitioner contends that the oral statement made to police officers on the night in question should have been suppressed and not heard by the jury as it was prejudicial to the petitioner. We disagree for two reasons. First, trial counsel did in fact file an omnibus pre-trial motion moving to exclude all illegal written and oral statements. On this fact alone, petitioner's claim fails. Second, the petitioner's oral statement to police officers corroborated the petitioner's defense; thus, the failure to take any further action to suppress the statement did not harm the petitioner. On the night in question, the petitioner approached the police officers and stated, "That shit was consensual." The petitioner's defense at trial was that the victim and the petitioner engaged in consensual sex. During trial counsel's evidentiary hearing testimony, trial counsel explained that he considered pursuing his initial motion to suppress the statement but declined to do so because the statement corroborated his client's defense. (N.T., June 28, 2011 at p. 9, 23). The petitioner was not

prejudiced by counsel's trial strategy; thus, this claim fails.

In regard to issue seven, trial counsel made a reasonable, strategic decision to not object to Sergeant Schaffer's identification of substance on the victim's pants as "consistent with blood." The sergeant testified at trial that the stains on the victim's pants were consistent with blood based on his experience and training. Petitioner argues that the phrase "experience and training" conveyed to the jury that he knew the stains were blood and that his statement was more than opinion. According to the petitioner, the sergeant's statements were improper and prejudiced the petitioner's case as a result. This claim is meritless. Although the sergeant's opinion does not qualify as a conclusive, medical fact, he may testify that the stains appeared to be blood. See *Commonwealth v. Schroth,* 479 Pa. 485, 491, 388 A.2d 1034, 1038 (1978); see also *Commonwealth v. Glover,* 401 A.2d 779, 782 (Pa. Super. 1979) ("A lay witness may testify that a certain substance appeared to be blood without having to subject the substance to chemical analysis). The sergeant testifying to what he saw based on his eight years of experience did not prejudice the petitioner. Sergeant Schaffer's opinion was not being offered as an expert witness; thus, trial counsel determined that no objection was necessary. (N.T., June 28, 2011 at p. 24).

Furthermore, trial counsel's decision not to cross-examine the sergeant concerning the blood stains was a reasonable, strategic decision. Generally, "where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular

course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Colavita,* 606 Pa. 1, 21, 993 A.2d 874, 887 (2010), quoting *Commonwealth v. Howard,* 553 Pa. 266, 274, 719 A.2d 233, 237 (1998). In the present matter, there was testimony from multiple witnesses concerning the victim's bleeding on the night in question. In fact, the petitioner himself testified that there was blood on the mattress pad and that the victim was bleeding when she left his parents' apartment. (N.T., February 28-29, 2008 at p. 14-16). Thus, trial counsel made a practical decision not to object to the sergeant's testimony as the testimony was consistent with the petitioner's own account of the events of that night. (N.T., June 28, 2011 at p. 24). According to trial counsel, objecting to the testimony would have been inconsistent with petitioner's defense and would have created a problem with the jury. (N.T., June 28, 2011 at p. 25). Therefore, trial counsel made a reasonable and well-calculated decision to devote more of the defense's time and resources to other areas of the defense rather than to an issue that was likely to draw disfavor with the jury. As such, this claim of ineffectiveness fails.

Lastly, trial counsel was not ineffective for his failure to object to Officer Floirendo's reading aloud portions of a police report as the reading did not prejudice the petitioner. During direct examination, Officer Floirendo read from his report that the victim related to him that the petitioner said to the victim prior to the assault "I'm sorry this got to happen." Petitioner maintains that this reading was triple hearsay and highly prejudicial to the petitioner's case. We find this argument unpersuasive. Subsequent to the officer's testimony, trial counsel was able to elicit from

the victim during cross-examination that she "did not remember that statement," which she allegedly made to Officer Floirendo. (N.T., June 28, 2011 at p. 14).

The victim's failure to adopt the statement attributed to her benefited the defense as it raised a credibility issue concerning the police officer's report. In addition, the absence of the victim's adoption of the statement corroborated the petitioner's claim that his inconsistent written statement to police was fabricated.

## CONCLUSION

In sum, we conclude that petitioner's PCRA petition is meritless. Accordingly, we enter the attached order.